UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CRYSTAL RICHARDSON,<br><br>    Plaintiff,<br><br>  v.<br><br>FANNIE MAE,<br><br>    Defendant. | Civil Action No. 1:05CV01422<br>Judge Ellen Segal Huvelle |

## DEFENDANT'S MOTION TO COMPEL
## ARBITRATION AND DISMISS THE COMPLAINT

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), and

Rule 81(c) of the Federal Rules of Civil Procedure, defendant Fannie Mae, through its

undersigned counsel, hereby submits this Motion to Compel Arbitration and Dismiss

the Complaint.  For the reasons more fully set forth in the accompanying Memorandum

in Support, the FAA requires that this litigation be stayed because the claims plaintiff

seeks to raise in this Court are subject to mandatory arbitration.  Dismissal, rather than

a stay of litigation, is appropriate here, however, because all of plaintiff's claims are

subject to mandatory arbitration.

Accordingly, Fannie Mae respectfully requests that its Motion to Compel be

granted and the Complaint be dismissed.

Fannie Mae respectfully requests oral argument on this motion.

Dated:  July 25, 2005                              Respectfully submitted,


                                                   By: /s/ Susan A. Littell
                                                   Susan A. Littell
                                                   D.C. Bar No. 458444
                                                   DICKSTEIN SHAPIRO MORIN
                                                      & OSHINSKY LLP
                                                   2101 L Street, N.W.
                                                   Washington, D.C.  20037-1526
                                                   (202) 785-9700

                                                   Attorneys for Defendant
                                                   Fannie Mae

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRYSTAL RICHARDSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>FANNIE MAE, )<br><br>Defendant. ) | Civil Action No. 1:05CV01422<br>Judge Ellen Segal Huvelle |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION
AND DISMISS THE COMPLAINT**

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"), and Rule 81(c) of the Federal Rules of Civil Procedure, defendant Fannie Mae, through its undersigned counsel, hereby submits this Memorandum in Support of its Motion to Compel Arbitration and Dismiss the Complaint. For the reasons more fully set forth below, the FAA requires that plaintiff Crystal Richardson ("plaintiff") first arbitrate her dispute with Fannie Mae consistent with its Dispute Resolution Policy ("Policy"), and further requires that this litigation be stayed or dismissed pending the outcome of that arbitration. Plaintiff is well aware of her binding obligations under the Policy, as she has already initiated an arbitration against Fannie Mae — currently pending before JAMS —raising many of the same claims she now brings in this Court.

I.      **STATEMENT OF FACTS**

On March 16, 1998, Fannie Mae implemented its "Dispute Resolution Policy" (the "Policy").[1] The policy requires job-related claims to go through arbitration before a

_____

[1] The Policy is attached as Exhibit 1 to the Declaration of Alan Tanenbaum (Attachment A).

neutral independent arbitrator before a suit can be filed in court. As of the Policy's

effective date of March 16, 1998, it expressly became a condition of employment for all

Fannie Mae employees; all employees working on that date thereby accepted the Policy

and agreed to be bound by it. The Policy states its binding effect in bold print on the

first page:

> **The effective date of the Policy is March 16, 1998. On that date, the Policy becomes a condition of employment for all Fannie Mae employees. This means that, by starting or continuing to work on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it. Fannie Mae also promises to be bound by the Policy.**

Policy, at 1.

The Policy then states its terms. In Paragraph No. 1, the Policy states that if

an employee has a claim that is covered by the Policy, "he or she must arbitrate the

claim under this Policy before bringing suit on it in court." Policy ¶ 1. As the Policy

further explains, the employee retains the right to accept or reject the arbitration

decision within 30 days after it issues. Policy ¶ 14. If the employee is not satisfied with

the results of the arbitration, he or she retains the right to bring his or her claims in

court. *Id.*[2]

In Paragraph No. 2, the Policy identifies the claims covered. Except for

specifically excluded exceptions not applicable here,[3] the Policy applies to:

---

[2] On the other hand, Fannie Mae *is* bound by the employee's decision regarding the arbitration: if the employee accepts the arbitration award, Fannie Mae is bound by it; if the employee rejects the decision and opts to litigate her claims, Fannie Mae cannot enforce the arbitration decision. Policy ¶ 14.

[3] The Policy exempts only claims filed in court or with an administrative agency "before the effective date of the Policy, [*i.e.*, before March 16, 1998]" as well as "any claim made in connection with workers' compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA or pension plans, or to any claim if unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty." Policy ¶ 2.

2

*all claims* that an employee might make against Fannie Mae . . .
involving a legally protected right, *that directly or indirectly relate to
his or her employment or the termination of that employment,* even if the
claim is based on facts or circumstances that occurred before the
effective date of the Policy. These include claims involving rights
protected by any federal, state, or other governmental constitution,
statute, ordinance, regulation, or common law. For example,
claims asserting rights protected by the Fair Labor Standards Act,
Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991,
the Age Discrimination in Employment Act, the Americans with
Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave
Act would be covered by the Policy.

Policy ¶ 2 (emphasis added). Former Fannie Mae employees also must arbitrate claims

under the Policy. Policy at 1 n.1 ("As used in the Policy, the word 'employee' includes .

. . former Fannie Mae regular, term, and temporary employees . . . ."). The Policy

designates JAMS/ENDISPUTE (now known as and hereinafter referred to as "JAMS")

as the administrator of any arbitration brought under the Policy. Policy ¶ 4.

Before adopting the Policy, Fannie Mae provided notice to all employees that

the Policy would become a condition of employment. During the week of January 12,

1998, Fannie Mae hand-delivered to each employee — including plaintiff — a packet

containing four items: (a) a copy of the Policy; (b) a cover memorandum dated

January 12, 1996, from Tom Nides, Senior Vice President, Human Resources, describing

the Policy; (c) a question-and-answer sheet; and (d) the arbitration rules and

procedures. *See* Decl. of Alan Tanenbaum (Attach. A) ¶ 3.

The cover memorandum distributed to plaintiff reiterated in bold print that

the Policy would be binding on all employees:

> **It is very important that you read the Dispute Resolution Policy
> and the other materials attached to this memorandum, because on
> March 16, 1998 the Policy will become a condition of employment
> for you and all other Fannie Mae employees. This means that, by
> starting or continuing to work for Fannie Mae on or after that
> date, you are indicating that you accept the Policy as a condition
> of employment and agree to be bound by it. Fannie Mae is also
> promising to be bound by the Policy. The Policy does not change**

3

> **the employment-at-will relationship between Fannie Mae and its employees.**

*Id.*, Ex. 2, at 2.

As the question-and-answer sheet explained:

> Q.    What happens if I file a lawsuit against Fannie Mae, involving a claim covered by the Policy, before arbitrating it?
>
> A.    Fannie Mae will ask the court to arbitrate the claim under the Policy.
>
> * * * *
>
> Q.    Is the Dispute Resolution Policy a contract?
>
> A.    Yes.  The Policy binds Fannie Mae and all persons who started or continued their Fannie Mae employment on or after March 16, 1998.  This means that if you start or continue to work on or after that date, you are accepting the Policy and agreeing to be bound by it.

*Id.*, Ex. 3, at 4, 5.  The Policy became effective on March 16, 1998, and plaintiff continued her employment thereafter.

Plaintiff's employment was terminated in April 2003.  *See* Decl. of Michael Freidman (Attach. B) ¶ 10.[4]  One year after she was terminated, plaintiff, acting pro se, filed with JAMS against Fannie Mae a demand for arbitration dated April 4, 2004 ("Demand").  *Id.* ¶ 2 & Ex. 1.  In the Demand plaintiff alleged "retaliation for sexual harassment and discrimination in violation of Title VII and the D.C. Human Rights Act as well as race discrimination," noting that she had been "terminated in April 2003."

---

[4] Although plaintiff was officially terminated in April 2003, her last day of work was actually July 14, 2000.  Plaintiff went on short-term disability leave from July 17, 2000, until that leave expired on January 12, 2001; she then went on long-term disability leave from January 13, 2001, until that leave expired on January 25, 2002.  Plaintiff was terminated in April 2003 for failing to return to work from her leave.  At no time from July 14, 2000 on, however, did plaintiff perform any work for Fannie Mae, either on- or off-site.  Decl. of Michael Freidman (Attach. B) ¶ 10.

4

*Id.*, Ex. 1. The Demand states: "I SUBMIT THIS CLAIM TO ARBITRATION UNDER FANNIE MAE'S DISPUTE RESOLUTION POLICY." *Id.* (capitalization in the original).

On November 16, 2004, JAMS officially commenced the arbitration, sending a "Notice of Commencement of Arbitration," along with a copy of JAMS rules and the Policy. *Id.* ¶ 3 & Ex. 2.[5] By this time, plaintiff had retained counsel, Charles Joseph. *Id.*, Ex. 2 (listing Charles E. Joseph as plaintiff's counsel). The parties were given a "strike-and-rank list" of potential arbitrators from which they were to select a neutral to decide the case. *Id.* Based on the parties' selections, on December 16, 2004, Judge Richard Levie (Ret.) was appointed arbitrator. *Id.* ¶ 6 & Ex. 4.

An initial conference call with the arbitrator and counsel was set for January 21, 2005. *Id.* ¶ 7 & Ex. 5. The call was postponed, however, while Fannie Mae's counsel and Mr. Joseph (plaintiff's counsel) discussed settlement. *Id.* ¶ 8. Although plaintiff's claims were both clearly time-barred and meritless, Fannie Mae offered a nominal settlement to avoid the cost of litigating the case. On February 1, 2005, Mr. Joseph informed JAMS that he was going to advise plaintiff to accept Fannie Mae's offer, and recommended that the arbitration be adjourned until further notice. *Id.* ¶ 8 & Ex. 6. JAMS agreed to stay all proceedings, and Fannie Mae awaited word from Mr. Joseph as to whether plaintiff would accept its settlement offer. *Id.* ¶ 8 & Ex. 6.

On two occasions in February and March, JAMS inquired about the status of the settlement talks; on both occasions Mr. Joseph replied that he was working on obtaining plaintiff's consent to Fannie Mae's offer, and recommended leaving the stay in place. *Id.* ¶¶ 8-9 & Exs. 6, 7. Mr. Joseph, however, apparently did not communicate

---

[5] The delay between plaintiff's submitting her Demand and JAMS officially commencing the arbitration apparently was at the request of plaintiff, who had asked JAMS to take no action on her Demand until such time as she was able to retain counsel.

Fannie Mae's settlement offer to plaintiff, and on June 28, 2005, plaintiff filed this lawsuit, alleging a litany of employment-related claims—despite the fact that such claims are clearly within the scope of the Policy and the fact that the arbitration *which she herself initiated* is still pending at JAMS.[6]

## II.    ARGUMENT

The Federal Arbitration Act governs the issue of whether plaintiff must be compelled to arbitrate her claims, because the Policy was part of plaintiff's employment agreement with Fannie Mae. *See Circuit City Stores v. Adams*, 532 U.S. 105 (2001) (FAA applies to arbitration agreements in the employment context because such agreements involve interstate commerce); *Booker v. Robert Half Intern., Inc.*, 315 F.Supp.2d 94, 98 (D.D.C. 2004) ("The Supreme Court has held that the coverage of the FAA extends to employment contracts."), *aff'd* __ F.3d __ (D.C. Cir. July 1, 2005). "The FAA provides that when a court is presented with a dispute covered by an arbitration agreement, the court 'shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Sapiro v. VeriSign*, 310 F.Supp.2d 208, 212 (D.D.C. 2004) (quoting 9 U.S.C. § 4).  A court must compel arbitration under the FAA where (1) a valid agreement to arbitrate exists between the parties, and (2) the specific dispute falls within the substantive scope of the agreement. *See id; see also, e.g., Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  Because both elements are present here, this Court must grant Fannie Mae's motion to compel arbitration.

A.    Plaintiff Is And Recognizes Herself To Be Bound By The Policy

As a former Fannie Mae employee, plaintiff is bound by the Policy.  The plain language of the Policy makes arbitration a condition of employment for all Fannie Mae

---

[6] Fannie Mae removed this case from the D.C. Superior Court to this Court on July 19, 2005.

6

employees who continued their employment after the Policy was adopted: "**by . . . continuing to work for Fannie Mae on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it.**" Policy, at 1 (bold type in the original).[7] Plaintiff was provided with advance notice that the Policy would become a condition of her continued employment, through a hand-delivered copy of the Policy and accompanying documents on January 12, 1998. *See* Decl. of Alan Tanenbaum (Attach. A) ¶¶ 3-4. By continuing as a Fannie Mae employee for more than five years after the Policy was adopted, plaintiff became bound by its terms. *See Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 56 (D.C. 1997) (remaining with employer after receipt of employee handbook stating terms of employment supplies the necessary consideration to make the promises in the handbook enforceable); *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 748 (D.C. Cir. 1998) (same); *see also, e.g., Venuto v. Ins. Co. of N. Am.*, 1998 WL 414723, at * 6 (E.D. Pa. July 22, 1998) (holding that employee was required to arbitrate under arbitration policy issued by employer, where employee received a copy of policy and thereafter continued her employment); *Kinnebrew v. Gulf Ins. Co.*, 1994 WL 803508, at *2 (N.D. Tex. Nov. 28, 1994) ("[F]ederal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter.").

If there could be any doubt on this point, plaintiff's actions make clear that she is—and recognizes herself to be—bound to arbitrate under the Policy. On April 4, 2004, plaintiff *herself* (and not through counsel) submitted a demand for arbitration to JAMS, raising claims she now presses before this Court. Decl. of Michael Freidman

---

[7] As noted, former employees like plaintiff are included in the Policy's definition of "employee." Policy at 1 n.1.

7

(Attach. B), Ex. 1.  In her Demand she expressly acknowledged: "I SUBMIT THIS CLAIM TO ARBITRATION UNDER FANNIE MAE'S DISPUTE RESOLUTION POLICY."  *Id.* (capitalization in the original).  She then retained an attorney and participated in the arbitration up through the selection of the arbitrator and the scheduling of the initial conference call, before the arbitration was stayed at her attorney's request.

It is well settled that "[o]nce a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority."  *Nghiem v. NEC Elecs., Inc.,* 25 F.3d 1437, 1440 (9th Cir. 1994); *Lopata v. Coyne,* 735 A.2d 931, 937 (D.C. 1999).  "Indeed, parties who voluntarily submit to arbitration can be deemed to have waived any objection that they were not under an agreement to arbitrate."  *Carey v. Conn. Gen. Life Ins. Co.,* 93 F. Supp. 2d 165, 169 (D. Conn. 1999) (compelling arbitration in favor of employer pursuant to arbitration policy in employee handbook on the ground that employee had initiated arbitration and participated through the appointment of the arbitrator); *see also, e.g., Nghiem,* 25 F.3d at 1441 ("Nghiem's voluntary initiation of arbitration can be interpreted as waiver of any objection he may have had over the authority of the arbitrator."); *Kiernan v. Piper Jaffray Cos.,* 137 F.3d 588, 594 (8th Cir. 1998) ("Appellants initiated the arbitration process in this case, and they cannot now argue, after receiving an unfavorable result, that the arbitration panel did not have authority to decide the issues involved.").  This is precisely what occurred here.  Having herself initiated the arbitration before JAMS "under Fannie Mae's Dispute Resolution Policy," Decl. of Michael Freidman (Attach. B), Ex. 1 (capitalization removed), plaintiff cannot now be heard to complain that she is not bound to arbitrate under that Policy.

As if her actions before JAMS were not enough, plaintiff's own Complaint in this Court makes clear that she understands she is required to arbitrate under the Policy. She complains about (and apparently seeks to recover damages for) Fannie Mae allegedly "denying [her] *arbitration rights* in accordance with their own policies." Compl. at 1 (emphasis added); *see also id.* at 2 (alleging that "Fannie Mae has denied me arbitration"). Plaintiff cannot on the one hand complain to this Court about an alleged denial of arbitration "rights," while at the same time assert that no enforceable arbitration agreement exists. Accordingly, plaintiff is bound by the Policy and must arbitrate all claims within its scope.

B.    The Claims Alleged In The Complaint Are Within The Scope Of The Policy, And The Matter Is For The Arbitrator To Decide

Although arbitrability questions such as whether a dispute falls within the scope of an arbitration agreement are usually for the court to decide, such questions must instead be resolved by the arbitrator where the parties "clearly and unmistakably" agree to have the arbitrator decide issues of arbitrability. *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002) ("the *question of arbitrability*, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise" (internal quotation marks omitted; brackets in *Howsam*)). Here, Fannie Mae and plaintiff agreed that "[t]he arbitrator will resolve all disputes over the interpretation and applicability of the Policy, *and over the arbitrability of all matters presented under it.*" Policy ¶ 16 (emphasis added). In light of this "clear and unmistakable" language, the arbitrator, and not this Court, must decide whether plaintiff's claims fall within the scope of the Policy. Thus, this Court need not (and should not) make an independent determination of whether the Policy encompasses plaintiff's claims before compelling arbitration.

9

In any event, plaintiff's claims fall squarely within the scope of the Policy. Under the Policy, plaintiff agreed to arbitrate "all claims . . . against Fannie Mae . . . that directly or indirectly relate to . . . her employment or the termination of that employment . . . [including] claims asserting rights protected by . . . Title VII of the Civil Rights Act of 1964 . . ." Policy ¶ 2. In her Complaint, plaintiff alleges a litany of claims against Fannie Mae, some of which she alleged and are pending before JAMS, and *all* of which clearly "directly or indirectly" relate to her employment and its termination: (1) violating "Title VII . . . by denying me promotions"; (2) "not providing protection to me as a whistleblower"; (3) "slandering my reputation"; (4) "stalking and harassing me"; (5) "retaliating against me for complaining about their illegal behavior"; (6) "wire-tapping"; (7) "denying [me] arbitration" by using "stalling tactics"; (8) failing to investigate her claims "that Fannie Mae's computer systems are compromised," provide a "computer forensic's examination," and "maintain privacy while this so-called investigation took place"; (9) "terminat[ing] my employment"; and (10) denying a "reasonable accommodation during a Fannie Mae-inflicted disability." Compl. at 1-2.

Clearly, plaintiff's claims are within the broad scope of her agreement to arbitrate. If there could be any doubt as to this point, such doubts must be resolved in favor of arbitration:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate a particular grievance *should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.* Doubts should be resolved in favor of coverage.

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added; internal quotation marks omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable

10

issues should be resolved in favor of arbitration"). Accordingly, this Court should

grant Fannie Mae's motion to compel arbitration.[8]

C.     This Court Should Stay Or Dismiss This Case Because All Of Plaintiff's
       Claims Are Arbitrable

Because plaintiff has refused to honor the express terms of her arbitration

agreement, the Court must stay this proceeding under § 3 of the FAA and refer

plaintiff's claims to the arbitration currently pending before JAMS.[9] *See, e.g., United*

*States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) ("If the issues in the case are

within the contemplation of the arbitration agreement, the FAA's stay-of-litigation

provision is mandatory, and there is no discretion vested in the district court to deny

the stay.").

Dismissal, rather than a stay of litigation, is warranted here, however,

because all of plaintiff's claims must be arbitrated. *See Emeronye v. CACI Intern., Inc.*,

141 F.Supp.2d 82, 88 (D.D.C. 2001) ("[B]ecause all of plaintiff's claims are subject to

arbitration, dismissal of this action is within the discretion of the Court and is

appropriate.") (collecting cases); *Nelson v. Insignia/Esg, Inc.*, 215 F.Supp.2d 143, 158

(D.D.C. 2002) (dismissing rather than staying case where all claims were arbitrable "in

---

[8] To the extent plaintiff is complaining about Fannie Mae's conduct before JAMS in an attempt to excuse her refusal to complete the arbitration process she initiated—*i.e.*, her baseless allegation that "Fannie Mae has denied [me] arbitration using a variety of stalling tactics," Compl. at 2—the claim is one properly for the arbitrator, not this Court. *See Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002) (noting that "waiver, delay, or a like defense" to arbitrability is a matter for the arbitrator to decide) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23-24 (1983)).

[9] Section 3 of the FAA states: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

11

accordance with what other courts have done when all of the plaintiff's claims must be

submitted to arbitration") (collecting cases); *Choice Hotels Int'l, Inc. v. BSR Tropicana*

*Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (under § 3 of the FAA "dismissal is a

proper remedy when all of the issues presented in a lawsuit are arbitrable"); *Alford v.*

*Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of the

authority clearly supports dismissal of the case when *all* of the issues presented in a

lawsuit are arbitrable."). Accordingly, for all of the above reasons, this Court should

dismiss plaintiff's complaint.[10]

III.     **CONCLUSION**

     For the foregoing reasons, the Court should grant Fannie Mae's Motion to

Compel Arbitration and either stay or dismiss this case.

---

[10] In the alternative, Fannie Mae requests that this Court stay all proceedings, including
Fannie Mae's obligation to respond to the complaint and discovery, until any Court-
ordered arbitration is completed. *See* 9 U.S.C. § 3 (requiring courts to stay proceedings
"upon being satisfied that the issue involved in such suit or proceeding is referable to
arbitration").

DSMDB.1953254.2

13

Dated:  July 25, 2005                          Respectfully submitted,


                                               By: /s/ Susan A. Littell
                                               Susan A. Littell
                                               D.C. Bar No. 458444
                                               DICKSTEIN SHAPIRO MORIN
                                                 & OSHINSKY LLP
                                               2101 L Street, N.W.
                                               Washington, D.C.  20037-1526
                                               (202) 785-9700

                                               Attorneys for Defendant
                                               Fannie Mae

## CERTIFICATE OF SERVICE

I hereby certify that, on July 25, 2005, I caused a copy of Defendant's Motion to Compel Arbitration and Dismiss the Complaint, Memorandum in Support thereof, exhibits thereto, and proposed Order to be served by first class mail, postage prepaid to:

Crystal Richardson
10482 Baltimore Ave.
Beltsville, Maryland  20705

Pro se

_____
David Schur

15

DSMDB.1953254.2