# ATTACHMENT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRYSTAL RICHARDSON,            ) | |
|              Plaintiff,    ) | |
|                   ) | Civil Action No. 1:05CV01422 |
|            v.         ) | Judge Ellen Segal Huvelle |
|                   ) | |
| FANNIE MAE,           ) | |
|                   ) | |
|            Defendant.    ) | |

## DECLARATION OF MICHAEL FRIEDMAN

1. My name is Michael Friedman. I am an Associate General Counsel of Fannie Mae, and have served in this capacity since August 1999. I submit this Declaration in support of Fannie Mae's Motion to Compel Arbitration and Dismiss the Complaint.

2. On or about April 6, 2004, Fannie Mae received from JAMS a Demand for Arbitration dated April 4, 2004, signed by Crystal Richardson. A true and correct copy of the Demand for Arbitration is attached as Exhibit 1.

3. On November 16, 2004, Fannie Mae received from JAMS a "Notice of Commencement of Arbitration" and accompanying documents. The Notice stated that JAMS had received a Demand for Arbitration in the case of *Crystal Richardson v. Fannie Mae*, JAMS No. 1410003536, and that an arbitration in the aforementioned case commenced as of November 16, 2004. The Notice included an "Arbitrator Strike-and-Rank List," and stated that the parties were to rank the listed potential arbitrators in order of preference and return the list to JAMS by November 23, 2004. Ms. Richardson's counsel Charles Joseph was listed as a recipient of the Notice. A true and correct copy of

the Notice of Commencement of Arbitration and accompanying documents is attached as Exhibit 2.

4. On November 22, 2004, JAMS sent Fannie Mae a substituted "Arbitrator Strike-and-Rank List." Ms. Richardson's counsel Charles Joseph was listed as a recipient of this letter. A true and correct copy of this document is attached as Exhibit 3.

5. On November 22, 2004, Fannie Mae submitted to JAMS its completed "Arbitrator Strike-and-Rank List."

6. On December 6, 2004, Fannie Mae received from JAMS a letter stating that Hon. Richard A. Levie (Ret.) had been appointed as Arbitrator in *Crystal Richardson v. Fannie Mae*, JAMS No. 1410003536. Ms. Richardson's counsel Charles Joseph was listed as a recipient of this letter. A true and correct copy of the letter is attached as Exhibit 4.

7. On January 3, 2005, Fannie Mae received from JAMS a "Notice of Conference Call" in *Crystal Richardson v. Fannie Mae*, JAMS No. 1410003536, scheduling a conference call for January 21, 2005, between the parties and the arbitrator, Judge Levie. Ms. Richardson's counsel Charles Joseph was listed as a recipient of this letter. A true and correct copy of the Notice of Conference Call is attached as Exhibit 5.

8. Fannie Mae and Ms. Richardson's counsel Mr. Joseph engaged in settlement discussions the week of January 17, 2005. By email to JAMS dated February 1, 2005, Mr. Joseph informed JAMS: "Defendant has proposed a resolution. I will advise my client to accept. I have not been able to reach her. In light of this, and my belief that she will accept, I think it the best use of everyone's time to further adjourn. If I am ultimately unable to reach my client, arbitration would in any event serve no purpose." By email dated February 1, 2005, JAMS agreed to postpone all proceedings in the case indefinitely. By email dated February 18, 2005, responding to JAMS' request for an update on

settlement of the case, Mr. Joseph wrote to JAMS that he was "having trouble locating [his] client" but was "going to recommend that she[] accept defendant's offer," and recommended leaving the case "in li[m]bo." True and correct copies of this email correspondence are attached as Exhibit 6.

9. By email dated March 14, 2005, again in response to JAMS' request for an update on the status of the case, Mr. Joseph wrote to JAMS: "We [are] still working on obtaining my client's consent, but I am optimistic." True and correct copies of this email correspondence are attached as Exhibit 7.

10. Fannie Mae hired Crystal Richardson on December 2, 1996. Ms. Richardson went on short-term disability leave on July 17, 2000, and remained on such leave until the leave expired on January 12, 2001. Ms. Richardson then went on long-term disability leave on January 13, 2001, and remained on such leave until the leave expired on January 25, 2002. Ms. Richardson was terminated on April 5, 2003, for failing to return to work from disability leave. Ms. Richardson performed no work for Fannie Mae, either on- or off- site, from July 14, 2000, on.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

7|21|05
_____
Date

_____
Michael Friedman

# EXHIBIT 1
# TO
# ATTACHMENT B

# DEMAND FOR ARBITRATION

*To submit a claim to arbitration under Fannie Mae's*
*Dispute Resolution Policy, you (or your attorney or representative, if any)*
*must complete this form and submit it to:*

J·A·M·S/ENDISPUTE
Attention: Fannie Mae Case Manager
1101 17th Street, NW
Suite 808
Washington, DC 20036
(Fax: 202-942-9186)

and a copy to:

The Office of Corporate Justice and Employment Practices
Fannie Mae
3900 Wisconsin Avenue, NW
Mail Stop: 1H-1E/09
Washington, DC 20016
(Fax: 202-752-3311)

Your Name: _Crystal Richardson_    Home Phone: _240-447-4881_
                   C/o Carol Richardson

Work Address: _n/a_    Work Phone: _n/a_

Home Address: _267 Kentland Blvd._
_Gaithersburg, MD 20878_

Calls or correspondence related to your claim
should be directed to you at ☐ home or ☐ work

Name, Work Address, Phone, Fax of Attorney or Representative (if any):

_none._

Legally-Protected Right(s) Involved in Your Claim:
(Identify all such rights that you believe have been violated.)
_Retaliation for Sexual Harrassment and_
_Discrimination in violation of Title VII_
_and the D.C. Human Rights Act as well_
_as race discrimination_

Detailed Description of Your Claim:
(Provide all relevant facts and dates. If more room is needed, you may use a separate sheet.)
_Terminated in April 2003_

Relief/Remedies Requested:
(Specify all relief/remedies you are seeking.)
_Front Pay_
_punitive damages_

I SUBMIT THIS CLAIM TO ARBITRATION UNDER FANNIE MAE'S DISPUTE RESOLUTION POLICY.

_Crystal Richardson_                    _4/4/04_
(Your signature or signature of your attorney or representative)    Date

*(Send white copy to J·A·M·S; send yellow copy to OCJ/EP; keep pink copy for your records)*

# EXHIBIT 2
# TO
# ATTACHMENT B



www.jamsadr.com                **THE RESOLUTION EXPERTS**                Offices Nationwide

# Fax Cover

**To:** Valaree Moodee, Esq.          **Phone:** (202) 752-7000      **Fax:** 202-752-2103
   *Fannie Mae*

   Charles Joseph, Esq.                       212-688-5640            212-688-2548
   *Joseph & Herzfeld*

**From:** Karen Cleet              **Phone:** 202-533-2019

**Date:** Tuesday, November 16, 2004    **Pages (Including Cover):**    34

**Case Name:**  Richardson, Crystal vs. FannieMae

**Reference:**  1410003536

---

**Comments:**

   Dear Counsel:

      Attached you will find a Notice of Commencement of Arbitration regarding the above case.
   Please contact me at (202) 533-2019 if you have any questions. Thank you!

   Sincerely,

   Karen Cleet
   Case Manager

This facsimile transmission is confidential. If you have received this transmission in error, please
notify the sender at the number listed above and discard the transmission. Thank you for your assistance.

555 13th Street, NW • Suite 400 West • Washington, DC 20004 • TEL 202.942.9180 • FAX 202.942.9188



# COMMENCEMENT OF ARBITRATION

Via U.S. Mail & Facsimile                                        November 16, 2004

Valaree M Moodee Esq.                          Charles E. Joseph Esq.
Fannie Mae                                     Joseph & Herzfeld
Mail Stop: 1H2S-05 (P. Denson)                 757 Third Avenue
3900 Wisconsin Ave., NW                        25th Floor
Washington, DC 20016-2892  USA                 New York, NY 10017  USA
Tel: 202-752-3098                              Tel: 212-688-5640
                                               Fax: 212-688-2548


RE:    **Richardson, Crystal / FannieMae**
       Binding Arbitration Reference #: 1410003536

Dear Parties:

This confirms that JAMS has received a Demand for Arbitration in the above-referenced matter. The
date of commencement of this arbitration is the date of this letter.

Pursuant to the parties' arbitration agreement and JAMS' policy, it is my understanding that this
arbitration shall be conducted in accordance with JAMS Employment Arbitration Rules and Fannie
Mae's Dispute Resolution Policy. All arbitrations at JAMS are conducted in accordance with the attached
Fee Schedule and Arbitration Administrative Policies regarding payment of fees, document retention, and
limitations of liability. It is important to familiarize yourself with the arbitration rules and the JAMS
Arbitration Administrative Policies.

Pursuant to the applicable arbitration rules and using the enclosed list of available Arbitrators and hourly
rates, the parties are hereby encouraged to mutually agree to an arbitrator.

Resumes are available on our website www.jamsadr.com or by contacting me.

If the parties are unable to mutually agree to an arbitrator, then using the following list of arbitrator
candidates each party may strike two name(s) and rank the remaining candidates in order of preference.
The deadline for return or your strike-list is close of business **on Tuesday, November 23, 2004:**

        Marvin Johnson, Esq.
        Homer LaRue, Esq.
        Edna Povich
        Jerry Roscoe, Esq.
        Irene Ziebarth, Esq.

If a party fails to respond to the list of arbitrator candidates in a timely manner, that party shall be
deemed agreeable to all the proposed candidates. JAMS will then confirm the appointment of the

arbitrator and begin scheduling.  If the parties are unable to agree on a date and time, the arbitrator shall determine those issues.

Each party will be assessed a pro-rata share of JAMS' fees and expenses as set forth in the enclosed Fee Schedule in effect at the time of the commencement of the arbitration. The parties may, however, agree to apportion the fees among themselves as they deem appropriate. Under appropriate circumstances, the arbitrator may award against any party JAMS' fees and expenses. JAMS' agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in arbitration.

Please contact me directly at 202-533-2019 should you have any questions, or if I may of further assistance.

Sincerely,

*Karen M. Cleet*

Karen M. Cleet
Case Manager
KCleet@jamsadr.com

**Richardson, Crystal / FannieMae**
**JAMS Reference # 1410003536**

## I. Fees for the Arbitration

The Parties and their attorneys agree to pay JAMS for the arbitration as set forth in the Fee and Cancellation Policy attached to and incorporated in this Agreement. JAMS' agreement to render services is jointly with the Party and attorney or other representative of the Party in Arbitration.

Unless otherwise agreed by JAMS, the Parties agree that they are liable for and agree to pay their portion of JAMS' fees and expenses and for all time spent by the arbitrator, including any time spent in rendering services before or after the arbitration hearing. The Parties agree to pay all invoices received prior to the hearing in advance of the arbitration hearing. If such fees have not been paid prior to the arbitration hearing, the Party or Parties that have not paid remain liable for such fees. The Parties agree that JAMS may cancel an arbitration hearing and will not deliver the arbitrator's decision to any Party without full payment of all invoices.

## II.     Records

Any documents or records provided to the arbitrator by the Parties can be destroyed by JAMS 120 days after the case has settled or the award has been issued, unless the Parties provide alternative disposition instructions to JAMS within the 120 day period.

## III.     Disqualification of the Arbitrator and JAMS as Witness/Limitation of Liability

The Parties have agreed or hereby agree that they will not call the arbitrator or any employee or agent of JAMS as a witness or as an expert in any proceeding involving the Parties and relating to the dispute which is the subject of the arbitration, nor shall they subpoena any notes or other materials generated by the arbitrator during the arbitration. The Parties further agree to defend the arbitrator and JAMS and its employees and agents from any subpoenas from outside Parties arising out of this Agreement or arbitration.

The Parties agree that neither the arbitrator nor JAMS, including its employees or agents, is a necessary Party in any proceeding involving the participants and relating to the dispute which is the subject of the arbitration. The Parties further agree that the arbitrator and JAMS, including its employees or agents, shall have the same immunity from liability for any act or omission in connection with the arbitration as judges and court employees would have under federal law.

## IV.     Party

The term "Party" as used in these Policies includes Parties to the Arbitration and their counsel or representative.

# ARBITRATOR STRIKE AND RANK LIST

_____        **Marvin Johnson, Esq.**

_____        **Homer LaRue, Esq.**

_____        **Edna Povich**

_____        **Jerry Roscoe, Esq.**

_____        **Irene Ziebarth, Esq.**



**THE RESOLUTION EXPERTS**



**Marvin E. Johnson, Esq.** is a nationally recognized mediator, arbitrator, and trainer with over 27 years of dispute resolution experience. He is the Founder and Executive Director of the Center for Alternative Dispute Resolution, an internationally recognized ADR entity, which provides dispute resolution education and training to culturally diverse audiences.

**ADR Experience and Qualifications**

- Mediated and arbitrated over 1,500 cases involving for-profit and not-for-profit corporations, federal and state agencies, and local government entities with dealings in numerous sectors including;

  - Health care; transportation; public safety; restaurant & hotel; technology; amusement/recreation; manufacturing; utilities; agriculture; education; security; housing; media; construction; insurance; banking & finance; communication; retail sales; national defense; electronics; warehousing; photographic imaging; real estate; museums and libraries; membership organizations; and more.

- Extensive experience facilitating, mediating and arbitrating labor, employment, and contract issues between and within organizations including:

  - Absenteeism; alcohol and drug abuse; arbitrability; dress code; health and welfare; incentive rates/standards; job evaluation; job posting and bidding; layoff, bumping and recall; contract interpretation; past practice; reduction in force; safety; training; transfer; union business; working conditions; civil rights; ADA; EEO; salary/rate of pay; benefits; termination; suspension; performance appraisals; work assignments; job classification, seniority, promotion, overtime, vacation, holiday pay, work schedules, sub-contracting, severance pay; transportation; EEO, diversity; communication, relationships, goals and objectives; reorganization, planning, and development of new/modified service delivery; management rights; breach of contract; credit card abuse; cell phone abuse; computer security violation; harassment and other inappropriate conduct; breach of contract remedy

**Honors, Memberships, and Professional Activities**

- Member of the President of the American Bar Association's (ABA) Advisory Council on Diversity, member of the ABA-Section of Dispute Resolution's Council, and former Chair of the Section's Diversity Committee
- Member, Board of Directors and Tri-Chair of Diversity Committee, Association for Conflict Resolution (a merged organization of AFM, CREnet and SPIDR)
- Member, Board of Directors, International Academy of Mediators
- Member, National Bar Association, Arbitration Section (previous member, Advisory Board and Vice President of Programs)
- Mediation Training to executives, managers and employees, Vorkuta, Russia, 1998
- ADR Training to Young African Leaders, May 2000 and April 2002
- Conflict Mgt. Training to representatives of Central and Eastern European Roma Organizations, May 2003
- Federal Service Impasses Panel, 1999-2002
- Maryland Alternative Dispute Resolution Commission, 1998
- Foreign Service Impasse Disputes Panel, June 2000
- U.S. Consensus Council-Policy Consensus Professional Advisory Committee, 2001
- Maryland State Labor Relations Board, 2002-2003
- Executive Committee Member of MACRO and Chair of Its Education and Schools Initiative (currently)

**Background and Education**

- Mediator, Arbitrator, and Trainer, Accornend Associates, 1984-2003
- Executive Director, Center for Alternative Dispute Resolution, 1986-present
- Associate Professor, Labor Relations, Law, and Dispute Resolution, Bowie State University, 1983-2000
- Director of Legal Programs, National Academy of Conciliators, 1983-1984
- Assistant Counsel, National Treasury Employees Union, 1981-1983
- Attorney, Federal Labor Relations Authority, Office of the General Counsel, 1980-1981
- Law Clerk, Federal Mediation and Conciliation Service, Office of the General Counsel, 1979-1980

555 13th Street, NW • Suite 400 West • Washington, DC 20004 • Tel 202-942-9180 • Fax 202-942-9188 • www.jamsadr.com

Marvin E. Johnson, Esq. (General Biography)

- Legal Research Assistant, National Football League Players Association, Legal Department, 1978-1979
- Federal Labor Relations Specialist, Dept. of Labor-Management Services Administration, Office of Federal Labor-Management Relations, 1974-1978
- Labor Economist, Department of Labor, Labor-Management Services Administration, 1974
- J.D., Catholic University Law School, 1980
- M.S., Industrial Relations, University of Wisconsin, 1974
- B.B.A., Kent State University, 1972

**References Available Upon Request**



**THE RESOLUTION EXPERTS**



*"Growth and prosperity in the workplace of the 21st century will go hand-in-hand with the growth of ADR. My commitment to integrity, competence, and efficiency is what I bring to the process of dispute resolution. My goal is to help the parties define their dispute and then to help them find their resolution of it."*

**Homer C, LaRue, Esq.**, for more than 20 years, has served as an arbitrator and mediator in numerous employment, labor and non-labor disputes, both in the public as well as the private sector.

**ADR Experience and Qualifications**

- Arbitrated and mediated cases involving such issues as: absenteeism, arbitrability, conduct (off-duty)/personal, demotion, discipline (non-discharge), discipline (discharge), discrimination (age, disability, race, sex, religion, national origin), drug/alcohol offenses, holidays, insurance, leave, vacation, health/hospitalization, hiring practices, job performance, jurisdictional dispute, layoffs/bumping/recall, management rights, official time, past practices, promotion, retirement, safety/health conditions, seniority, sexual harassment, subcontracting/contracting out, tenure/reappointment, cost-of-living pay, holiday pay, incentive pay, job classification

- Diverse industry experience includes: airlines, automotive, beverage, chemicals, clothing, communications, construction, education, electronics, food (manufacturing/processing/service), government (local and federal), health care, hotels/motels, hospital/nursing home, maritime, nuclear energy, organizations, packaging, petroleum/petrochemicals, pharmaceuticals, plastics, police and fire, postal service, public utilities, transportation (bus and rail), and others

- Served as a mediator in approximately 1,000 public sector labor negotiations while with the New York State Public Employment Relations Board

- Conducted settlement conferences under the unfair labor practices provisions of the Taylor Law

- Directs the Alternative Dispute Resolution curriculum at Howard University School of Law in Washington, D.C.; founded and supervises the Law School's first ADR Clinic

- Lectures extensively in mediation, arbitration, and other forms of dispute resolution to a variety of business, labor, and bar groups including internationally. He serves as a technical advisor and trainer for the Commercial Law Development Program of the U.S. Dept. of Commerce on an ongoing project designed to assist in the development of a regional ADR system in Central and West Africa for the resolution of commercial disputes

- As the Director of the New York State School of Industrial and Labor Relations Extension Division in New York City, he oversaw the development of labor-management training programs and developed programs to assist persons of color in becoming mediators and arbitrators in labor and non-labor disputes

- Co-creator and designer of a JAMS-supported program to increase the diversity of mediators in the United States, known as ACCESS ADR

**Honors, Memberships, and Professional Activities**

- Fellow, College of Labor and Employment Lawyers, Class of 2003
- Member, American Bar Association Section of Dispute Resolution and Member of the Section Council
- Member, National Academy of Arbitrators
- Member, Chartered Institute of Arbitrators, N. A. Branch
- Permanent arbitrator in a number of collective bargaining agreements including airlines and telecommunications
- Past Chair, Maryland State Labor Relations Board

**Background and Education**

- Arbitrator/Mediator, Federal Mediation & Conciliation Service and American Arbitration Assoc., 1983-2003
- Professor of Law, Howard University School of Law, since 1995 (teaching law since 1983)
- Associate Professor and Metropolitan Director, The Extension Division of the Cornell School of Industrial and Labor Relations, 1981-1983
- Regional Director-NYC, New York State Public Employment Relations Board, 1979-1981
- Assistant United States Attorney, Eastern District of NY (Civil Division of U.S. Attorney's Office), 1978-1979
- Assistant General Counsel, AFSCME, District Council 37 (NYC), 1975-1978
- M.I.L.R., Cornell University, School of Industrial and Labor Relations, 1975
- J.D., Cornell University School of Law, 1974
- B.A., Purdue University, 1970



**THE RESOLUTION EXPERTS**



**Edna A. Povich** is well known for her extensive ADR systems expertise and her ability to settle highly emotional, multi-party matters.

An active mediator for more than two decades, Edna Povich joined JAMS when ADR Associates combined their firm with JAMS in 2004.

## ADR Experience and Qualifications

- Mediated highly charged community-wide disputes involving commercial developers, neighbors, planners, and historic preservationists
- Resolved disputes for managers and employees, public institutions and neighbors, divorcing couples, and community members
- Served as Project Director for a two-year facilitated project that resulted in the development of National Standards for Court-Connected Mediation Programs. The Standards received the Center for Public Resources' 1992 Award for Excellence and Innovation in Alternative Dispute Resolution
- Worked with a municipal corporation to design and implement a conflict management system
- Analyzed and restructured the dispute resolution systems for the Bureau of National Affairs, Inc.
- Designed a dispute resolution program for the U.S. Department of Health and Human Services to test as a model for social service projects in cities across the country
- Director of the U.S. Equal Employment Opportunity Commission's Pilot Mediation Program in several cities nationwide
- Developed and implemented a system-wide mediation program for the D.C. Public School System
- Lead a two-year project, funded by the World Bank, to design and implement mediation programs in the courts in the West Bank and Gaza
- Trained directors of social service agencies receiving grants from the U.S. Department of Health and Human Services as mediators and as mediation trainers
- Facilitated meetings for the Federal Reserve Board and the Federal Labor Relations Authority
- Trained lawyers, judges, and other professionals as mediators for court-connected programs, American Health Lawyers Association and other programs

## Representative Matters

Mediated employment cases for numerous corporations and organizations, including:

- The Ford Motor Company
- Bell Atlantic
- Fannie Mae
- Honeywell International
- The Federal Reserve System
- The U.S. Office of Compliance
- The International Monetary Fund
- The U.S. Department of Energy

## Honors, Memberships, and Professional Activities

- Member, Association for Conflict Resolution (ACR), formerly the Society for Professionals in Dispute Resolution 1989-present
- Member, ABA Dispute Resolution Section, 2000-present
- President, D.C. Chapter of the Society of Professionals in Dispute Resolution, 1990-1991

## Background and Education

- Principal, ADR Associates, LLC, 1990-2004
- Vice President, Center for Dispute Settlement, 1996-present

Edna A. Povich (General Biography)

- Consultant to President Clinton and Attorney General Janet Reno, 1996-1997
- M.A., University of Maryland, 1981-1985
- B.A., *magna cum laude*, University of Maryland, 1966

**References Available Upon Request**



**THE RESOLUTION EXPERTS**



**Jerry P. Roscoe, Esq.** offers expertise mediating and arbitrating complex cases. Jerry Roscoe joined JAMS when ADR Associates combined their firm with JAMS in 2004. He brings over 20 years of experience in the resolution of disputes including mediating complex, multi-party matters, Supreme Court cases, and international conflicts. His arbitration experience includes a wide range of domestic and international matters.

**ADR Experience and Qualifications**

- Conducted hundreds of mediations and arbitrations in a wide variety of areas including commercial, contract, employment, environmental, healthcare, insurance, international, medical negligence, public policy, securities, Superfund, and telecommunications
- Assisted in the Design and Implementation of EEOC's Mediation Pilot Program
- Designed dispute resolution processes for Fortune 500 corporations
- Mediated international conflict in Bosnia; and built court mediation and arbitration programs in GAZA and the West Bank
- Trained thousands of attorneys, judges, mediators, and arbitrators in public, private, and international sectors

**Representative Matters**

- **Commercial/Contract:** Mediated international contract dispute regarding development of internet communications infrastructure and Internet service providers by U.S. company in foreign country; corporate and law partnership dissolutions; construction contract disputes; contract disputes arising from alleged construction defects and cost overruns during construction of resort hotel; royalty, intellectual property, and publishing disputes; employment contracts; and government contracts
- **Employment:** Mediated and arbitrated hundreds of employment cases including Title VII, ADEA, FMLA, same-sex discrimination, class actions and non-certified streams of cases; matters involving highly placed corporate officers, government officials, and members of the United States Senate and House of Representatives; class actions with international parties and the Panama Canal Commission; and cases involving major airlines and motor vehicle manufacturing companies
- **Environmental:** Mediated case alleging California water contamination by the United States government resulting from World War II zinc mining operations; case involving state government and 63 PRP's to determine remediation technologies as well as allocation of liability and cost for contamination of waterways in the State of Ohio flowing into the Great lakes; Superfund and CERCLA matters; leaking underground storage tanks; and groundwater contamination
- **Insurance:** Mediated and arbitrated multi-million dollar vaccine injury claims by adults and children; insurance liability; insurance coverage; and reinsurance
- **Healthcare:** Arbitrated multi-million dollar case involving health care procedure coding; mediated and arbitrated claims regarding medical negligence, credentialing, and reimbursement
- **Public Policy:** Mediated local and international political conflicts between Croat and Muslim factions throughout Bosnia; federal action involving a national environmental organization suing the federal government over water resource allocation; federal appellate case regarding siting of liquefied natural gas storage and transmission facilities in New England; case on remand from United States Supreme Court re-defining the federal regulatory concept of "coal operator"
- **Securities:** Mediated several cases brought by investors alleging brokerage house fraud; cases referred by the National Association of Securities Dealers
- **Tort:** Mediated maritime dispute involving liability of federal government for death on board a merchant marine vessel engaged in military support activity; negligence, malpractice, and wrongful death claims pursuant to delivery of medical care, train accidents, fatal fires, firearms, automobiles, and workplace injuries

**Honors, Memberships, and Professional Activities**

- Member, District of Columbia Bar Committee on Alternative Dispute Resolution, since 1997
- Member, Society of Professionals in Dispute Resolution since 1989 (President, D.C. Chapter, 1993 and Board of Directors, 1992-1994)
- Fellow, International Academy of Mediators, since 1998 (Chair, D.C. Bar Litigation Section ADR Committee, 2004 term)
- Teaches Mediation and Negotiation at the Georgetown University Law Center and George Washington University Law School

- ADR articles authored by Jerry Roscoe include "Mediating Bioethical Disputes," October 2003; "Mediation, Arbitration, What's the Difference," September 2002; and "Advocacy Skills: Tips for Selecting a Good Mediator," January 2002

**Background and Education**

- Partner, ADR Associates, LLC, 2000 to present
- Senior Associate, the Center for Dispute Settlement, 1990-present
- Litigator and Mediator, 1982-1990; Mediator, District of Columbia Citizens' Complaint Center, 1982-1983
- Special Assistant, United States Attorney, 1980-1982
- J.D., Catholic University Columbus School of Law, Washington DC, 1982
- B.A., Colgate University, Hamilton, New York, 1975

**References Available Upon Request**



**THE RESOLUTION EXPERTS**



**Irene E. Ziebarth, Esq.** is widely known for her ability to organize, manage, and resolve complex cases. Respected by plaintiffs and defendants, she keeps the process moving, never losing site of the goal: resolution of the dispute. She is extraordinarily effective and innovative.

**ADR Experience and Qualifications**

As an attorney, Ms. Ziebarth represented clients in arbitrations, mediations and references at JAMS. Since joining the company in 1997, Ms. Ziebarth has presided over and resolved over 400 cases in the following substantive areas:

*What attorneys say:*

*"She has excellent communication skills."*

*"She is effective without being rude or difficult."*

*"Her respect for trial lawyers arises out of her own trial practice."*

*"She is available for interviews."*

- **Class Action:** over 400 race discrimination cases brought against the Department of Agriculture; 260-party asbestosis case; construction defect cases
- **Financial Services:** all manner of banking cases, including receiverships, mechanics liens against lenders, eminent domain, loan brokerage agreements, wrongful foreclosure
- **Business:** partnership syndication, claims for accounting, interference with business relations, construction, contracts
- **International Business:** resolved cases with parties from Canada, Thailand, China, Japan, Nigeria and Israel
- **Real Estate:** industrial, commercial and residential real estate disputes including construction
- **Tax:** adjudicated thousands of industrial, commercial, and residential property tax assessment appeals including boats and airplanes

**Representative Matters**

- Race discrimination action against USDA arising out of loan processing
- Lender refusal to accept loan assumption
- Tax dispute with company engaged in booking, presenting, and promoting musical events in public venues
- Multi-party construction defect action resolved on innovative fast track program
- Misappropriation of trade secrets and customer lists by departing employees
- Interpretation of contract for sale to hospital of adjoining parking lot
- Failure to disclose broken concrete slab in residential sale

**Honors, Memberships, and Professional Activities**

- Numerous articles published on such topics as maximizing the benefits of ADR, reducing corporate litigation budgets, and mediation in international maritime disputes, among others.

**Background and Education**

- Admitted to the Bar of the District of Columbia, December 2002
- Admitted to practice before the U.S. Supreme Court, November 2002
- Ms. Ziebarth has over 17 years of hands-on complex dispute resolution experience and training. She teaches ADR to a wide range of participants from industry professionals to law students. Programs include:
  - Trial Court Settlement Conferences and Pro Tem Panel
  - Property Tax Assessment Appeals
  - JAMS Arbitrator and Mediator Skills Workshops
  - American Arbitration Association Insurance Dispute Resolution Training
  - CLE and Bar Association Environmental Mediation
- J.D., Loyola Law School, Los Angeles, CA, 1984
- B.A., California State University, Fullerton, CA, Philosophy, 1980 (Dean's Honor List)
- Private Pilot

**References Available Upon Request**



**Irene E. Ziebarth, Esq.**

**Employment Dispute Resolution Experience**

Irene Ziebarth brings over 20 years of formal dispute resolution experience to her practice. She adjudicated thousands of matters as an administrative judge, authored over 400 written opinions as an arbitrator/adjudicator, and managed complex multi-party cases to economic, timely conclusions.

She successfully mediated a variety of employment matters as court appointed settlement officer and mediator selected by the parties because of her corporate experience coupled with demonstrated respect for individual participants who say they feel heard, understood, and respected by her.

Her employment experience includes misappropriation of trade secrets, failure to promote and termination agreements, employment benefits, and gender, age, religious, and race discrimination, under federal and state law, involving employees in public and private companies, medical, legal, and accounting practices, universities, government, and religious institutions.

**Representative Matters**

- Arbitrated a highly charged emotional case against a program of the United States government. Issues included government adherence to grant application proposals, employee compliance with application procedures, and communication of policies and procedures within and outside the government.

- Mediated dispute between a large construction company and an employee. Issues included fraud, lack of salary parity, and employment benefits. There were highly sensitive interpersonal dynamics between parties of widely disparate corporate employment.

- Successfully resolved a dispute between a bank and terminated mortgage loan broker. Issues included post termination allocations for services rendered during employment.

- Successfully resolved a dispute between a multi-state professional corporation and the professional head of its division in Florida. Issues included termination during third year of a five-year employment contract, enforceability, term, and geographic scope of non-compete agreement, and public relations announcements of termination.

- Successfully resolved dispute between an employee and an international conglomerate over per diem expenses, past salary owed, and severance pay when the employee was shifted from one company in Asia to another company in Europe. Issues included employee versus consultancy agreement, scope of agreement from one company to another, and potential for continuing relationship.

**Honors, Memberships, and Professional Activities**

- Numerous articles published on such topics as maximizing the benefits of ADR, reducing corporate litigation budgets, and mediation in international maritime disputes, among others

**Background and Education**

- Admitted to the Bar of the District of Columbia, December 2002
- Admitted to practice before the U.S. Supreme Court, November 2002
- Ms. Ziebarth has over 17 years of hands-on complex dispute resolution experience and training. She teaches ADR to a wide range of participants from industry professionals to law students. Programs include:
  - Trial Court Settlement Conferences and Pro Tem Panel
  - Property Tax Assessment Appeals
  - JAMS Arbitrator and Mediator Skills Workshops
  - American Arbitration Association Insurance Dispute Resolution Training
  - CLE and Bar Association Environmental Mediation
- J.D., Loyola Law School, Los Angeles, CA, 1984
- B.A., California State University, Fullerton, CA, Philosophy, 1980 (Dean's Honor List)
- Private Pilot



THE RESOLUTION EXPERTS

# ARBITRATION
# FEE SCHEDULE

## PROFESSIONAL FEES

- Hourly and daily rates vary depending on Arbitrator selected. Neutrals are independent contractors and set their own rates. Parties will be billed for expected hearing, reading/research and award preparation time.

- Except as provided in the footnotes below, each party will be assessed a pro-rata share of all fees and expenses. The parties may, however, agree to apportion the hearing fees among themselves as they deem appropriate.

## NON-REFUNDABLE CASE MANAGEMENT FEE

| Hearing Length: | Fee: |
|---|---|
| 1 Day or Less (up to 10 hours of professional time) | $ 250 Per Party |
| 2 Days (up to 20 hours of professional time) | $ 500 Per Party |
| 3 Days (up to 30 hours of professional time) | $ 750 Per Party |
| 4 Days or More (more than 30 hours of professional time) | 10% of professional fees, divided by parties according to their fee arrangement |

Professional fees include time spent for hearings, pre- and post-hearing reading/research, and award preparation.

- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, use of JAMS conference facilities (after-hours, weekends and holiday consideration), and on-site business support including local phone service, internet access and fax/copying capabilities.
- The Case Management Fee is reassessed on cases that continue beyond originally scheduled professional time.
- The Case Management Fee may vary depending on neutral.

## POLICIES

- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing.
- Receipt of payment for all fees is required prior to service of an arbitration award that the Arbitrator(s) has rendered.

### CANCELLATION/CONTINUANCE POLICY:

| Hearing Length | Cancellation/Continuance Period | Hearing Fees |
|---|---|---|
| 1 day or less | 14 days or more from hearing | 100% REFUNDABLE except for any Arbitrator time incurred |
| 2 days or more | 30 days or more from hearing | 100% REFUNDABLE except for any Arbitrator time incurred |
| Hearings of any length | Inside the Cancellation/Continuance Period | NON-REFUNDABLE Fees Due within 72 hours of invoicing |

- Hearings cancelled/continued inside the period reflected above will be refunded if the neutral's time can be rebooked with another matter.
- In all cases involving non-refundable time, the party requesting the cancellation/continuance is responsible for the hearing fees of all parties.
- All fees are due and payable upon receipt of invoice and payment must be received in advance of hearing.
- JAMS may cancel a scheduled hearing because of non-receipt of all fees by the applicable cancellation period.
- Cancellation/Continuance policy may vary depending on neutral.

*JAMS' agreement to render services is not only with the Party, but also the attorney or other representative of the Party*

+ For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is the $250 per party fee for a 1-day case. The employer must bear the employee's share of any increased Case Management Fee. Any questions or disagreements about whether a matter arises out of an employee-promulgated plan or an individually-negotiated agreement or contract will be determined by JAMS, whose determination shall be final.

++For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $125. (In California, an indigent consumer may be entitled to a waiver of the entire fee.) The balance of the fee, including JAMS Case Management Fee, must be paid by the company.

© JAMS 2003. All rights reserved.



THE RESOLUTION EXPERTS

# Document Retention Policy

Please note that <u>120 CALENDAR DAYS</u> after termination of any case JAMS will destroy the following <u>documents</u> submitted by parties unless parties specifically notify JAMS that they wish to collect their documents:

- Briefs
- Exhibits
- Evidence
- Transcripts

Parties should then collect their documents within 30 calendar days of the time of their request. If parties do not indicate that they wish to gather their documents, JAMS will destroy these documents 120 calendar days after termination of the case.

"Termination" of a case is defined as any of the following:
- Resolution of a matter, e.g., either through settlement or issuance of an award
- Mutual agreement to close the matter
- Withdrawal from ADR process
- Time period of one year elapses without any resolution and no future dates on calendar
- Notice from JAMS that the matter has been terminated

rev.11.02.01

# DISPUTE RESOLUTION POLICY

In any work environment, job-related disputes occasionally arise. At Fannie Mae, these are usually resolved through the Company's open door policy or the efforts of the Office of Corporate Justice ("OCJ"), which addresses disputes using a variety of alternative dispute resolution tools, including counseling, facilitated negotiation, mediation, and investigation/decision. With the introduction of this Dispute Resolution Policy ("Policy"), certain job-related claims must go through arbitration by a neutral independent arbitrator before a suit can be brought on them in court.

Arbitration is a process in which a claim is presented to a neutral person (an arbitrator) instead of to a judge or jury in court. The arbitrator makes a decision on the claim after both sides present their evidence and arguments at an arbitration hearing. The hearing is much less formal than a court trial.

**The effective date of the Policy is March 16, 1998. On that date, the Policy becomes a condition of employment for all Fannie Mae employees. This means that, by starting or continuing work for Fannie Mae on or after that date, each employee is indicating that he or she accepts the Policy as a condition of employment and agrees to be bound by it. Fannie Mae also promises to be bound by the Policy.**

## 1. Arbitration as Prerequisite to Lawsuit.

If an employee[1] has a claim that is covered under Section 2 of this Policy, he or she must arbitrate the claim under this Policy before bringing suit on it in court.

## 2. Claims Covered by the Policy.

The Policy applies to all claims that an employee might make against Fannie Mae (and its directors, officers, agents, or employees, in their representative capacities) involving a legally-protected right, that directly or indirectly relate to his or her employment or the termination of that employment, even if the claim is based on facts or circumstances that occurred before the effective date of the Policy. These include claims involving rights protected by any federal, state, or other governmental constitution, statute, ordinance, regulation, or common law. For example, claims asserting rights protected by the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act,

---

[1] As used in the Policy, the word "employee" includes current or former Fannie Mae regular, term, and temporary employees (including paid interns). Independent contractors and third-party contract employees are not covered by the Policy.

1

the Americans with Disabilities Act, 42 U.S.C. § 1981, or the Family and Medical Leave Act would be covered by the Policy.

The Policy does not apply to any claim that is filed in court or with the EEOC or any other administrative or fair employment rights agency before the effective date of the Policy. The Policy also does not apply to any claim made in connection with workers' compensation benefits, unemployment compensation benefits, or under any of Fannie Mae's employee welfare benefit, ERISA, or pension plans, or to any claim of unfair competition, disclosure of trade secrets, or breach of trust or fiduciary duty.

The Company may assert that the employee's claim is barred because it does not involve a legally-protected right, and the arbitrator may be requested to rule on this issue as a preliminary matter before conducting a hearing on the substance of the employee's claim.

## 3. Right to Pursue Administrative Complaints.

The Policy does not change or in any way affect an employee's right to file a charge or complaint with the EEOC or any other administrative or fair employment rights agency. During an employee's participation or involvement in any of Fannie Mae's dispute resolution processes (including arbitration under the Policy), there will be no suspension, extension, or postponement of any applicable time limit or deadline by which the employee is required to file such an administrative charge or complaint. The Policy does not bar or restrict any employee, at any time, from assisting or cooperating with any such agency's investigations or proceedings. However, if an employee has an administrative charge or complaint pending while arbitrating it under the Policy, Fannie Mae will ask the agency to suspend its proceedings while the matter is arbitrated. Regardless of whether the agency agrees to suspend its proceedings, arbitration under the Policy will proceed.

## 4. Election of Arbitration.

If the OCJ has not resolved, to the employee's satisfaction, an employee's complaint involving a legally-protected right, the employee may initiate arbitration by sending a completed "Demand for Arbitration" form (which may be obtained from the OCJ) to JAMS/ENDISPUTE ("JAMS") and a copy to the OCJ. JAMS is the independent and neutral national arbitration service that will administer all arbitrations under the Policy. If an employee submits a "Demand for Arbitration" form to JAMS before the OCJ has investigated the claim, the OCJ may conduct an internal investigation while the arbitration is proceeding, and the employee will have a continuing obligation to cooperate fully and candidly with the OCJ investigator. At any time before the arbitration hearing is held, the parties may agree to submit the complaint to mediation.

2

## 5. Rules and Procedures.

Arbitration will be conducted under the rules and procedures contained in the Policy, supplemented by JAMS's Arbitration Rules and Procedures for Employment Disputes ("JAMS's rules"). In the event of a conflict between JAMS's rules and those contained in the Policy, the Policy will prevail.

## 6. Time Limit on Submission of Claims.

In order for an employee's claim to be eligible for arbitration, JAMS must receive the employee's completed "Demand for Arbitration" form within the time limit set by law for bringing suit on that claim in court. If the Company contends that the claim was not made within the time limit, the arbitrator may be requested to decide the issue before any hearing on the substance of the claim. If JAMS receives the "Demand for Arbitration" form within the time limit for bringing suit in court, but that time limit runs out during the arbitration, the Company will agree to extend the time limit for up to 60 calendar days after the date of the arbitration decision, so that the employee has an opportunity to bring a timely suit on the claim in court, if he or she rejects the decision as provided in this Policy.

## 7. Arbitrator Selection and Replacement.

For each arbitration under the Policy, the employee and the Company will mutually select one arbitrator from among the qualified arbitrator candidates identified by JAMS. Each arbitrator candidate will have the following qualifications:

- attorney or former/retired judge;
- minimum of seven years' experience in legal and/or judicial practice; and
- substantial employment law experience (as determined by JAMS).

After receiving the employee's completed "Demand for Arbitration" form, JAMS will prepare and submit, to the employee and the Company, a list containing five arbitrator candidates who have the qualifications stated above, together with their resumes or biographical summaries. Within seven calendar days after JAMS sends the list of arbitrator candidates, each party must strike up to two names from it, rank the remaining arbitrator candidates in order of preference, and return the list to JAMS. If there is more than one candidate remaining after the parties' strikes, JAMS will appoint as arbitrator the one with the highest total ranking by the parties. If a highest total ranking cannot be determined, then JAMS will designate the arbitrator from among the candidates who have not been stricken. If a party fails to send the list back to JAMS within the seven calendar days, JAMS will assume that the party has accepted all of the arbitrator candidates on the list.

If, for any reason, the arbitrator is unable to fulfill his or her duties, a successor

arbitrator will be chosen in this manner.

8. Employee Participation.

Fannie Mae will excuse from their business duties, without loss of pay or benefits, all employees (including the employee who has made the claim) who are needed to provide testimony or attend arbitration proceedings, for such time as they are needed and actively participating.

9. Representation.

The employee may have an attorney or other representative, at his or her sole expense, present during any phase of arbitration.

The Legal Department will arrange for the Company's representation in arbitration. However, the Legal Department may advise a manager to secure his or her own representation if it determines that the manager's interests may be in conflict with the Company's.

10. Exchange of Information.

The employee and Fannie Mae each will be entitled to obtain relevant information from the other prior to the arbitration hearing, through informal exchange and:

- request(s) that the other party produce a reasonable number of relevant documents;
- one request that the other party answer not more than 25 relevant questions, including sub-parts;
- two or fewer "fact" witness depositions; and
- "expert" witness depositions.

11. Fees and Expenses.

Fannie Mae will pay all arbitration filing, case management, and/or administrative fees charged by JAMS, as well as all hourly or daily fees of the arbitrator. In order to preserve the impartiality of the arbitrator, the Company will make all such payments to JAMS, and JAMS will in turn pay the arbitrator's fees.

An employee who chooses to have a lawyer or other representative for the arbitration must pay all of that lawyer's or representative's fees and expenses. In addition, each party must pay all of its own expenses for acquiring or "discovering" information or testimony (e.g., taking an individual's deposition); and the fees and expenses of its "expert" or outside witness(es).

4

## 12. The Arbitration Hearing.

Either party may offer as evidence, and the arbitrator may admit into the record or consider, any agreement the parties have reached for resolving any claim(s) being arbitrated, and any findings and remedial actions resulting from a Company investigation into the same or substantially similar facts underlying the claim(s) being arbitrated.

## 13. The Award.

The arbitrator's decision ("Award") will consist of a written statement of disposition and relief, if any; and a written statement of reasons supporting the disposition and relief, if any. The Award will be based on the facts and the prevailing judicial interpretation of applicable law. The arbitrator may award any remedy or relief to the employee that is consistent with the arbitrator's authority under the law governing the employee's claim, including attorneys' fees and expenses. The Award is admissible as evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

## 14. Rejection/Acceptance of the Award.

The employee may, *within 30 calendar days of the date of issuance of the Award*, reject it, in its entirety, by sending a completed "Rejection of Arbitration Award" form to JAMS and the OCJ. If the employee rejects the Award, it will not become binding on the employee or the Company, and the employee may bring suit on the claim at his or her own expense.

If the employee does not reject the Award during the 30-day period, the Award becomes binding on both the Company and the employee, and the employee may not bring suit against Fannie Mae (or its directors, officers, agents, or employees, in their representative capacities) on any claims arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration. If the employee does not reject the Award, he or she may not receive any award resulting from his or her EEOC or other administrative charge, or from any lawsuit brought by the EEOC or other administrative or fair employment rights agency on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration. If the employee has filed a charge with the EEOC or any other administrative or fair employment rights agency, Fannie Mae will notify the agency that the claim has been resolved through arbitration.

At the expense of the party requesting it, any court having jurisdiction over a binding Award may enter an order giving it the force of law.

### 15. Enforcement of the Award.

Proceedings to enforce, confirm, modify or vacate an Award will be subject to the standard of review set forth in the Federal Arbitration Act (FAA).

### 16. Interpretation and Governing Law.

The arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it. This Policy is an agreement to arbitrate pursuant to the FAA. The Policy will, in all respects, be interpreted, enforced, and governed under the FAA.

### 17. Severability/Waiver.

If any provision of this Policy is held to be legally invalid or unenforceable, it will not affect the remainder of this Policy, which will continue to be in full force and effect. No failure by the Company or the employee to insist on strict compliance with any part of the Policy will be interpreted as a waiver of that part of the Policy.

### 18. Confidentiality and Privacy.

The entire arbitration proceeding, including all statements, documents, evidence, and the Award, is confidential and will not be disclosed to anyone other than the parties, their representatives, the JAMS Case Administrator, the Legal Department, and the OCJ, except: (i) to the extent that the parties agree otherwise in writing; (ii) as necessary to respond to a lawful order of a governmental official or agency; (iii) for use in a judicial proceeding to enforce, confirm, modify, or vacate an Award; or (iv) as offered into evidence in any litigation or proceeding on any claim arising out of the same facts or circumstances that were raised, presented, or decided in the arbitration.

### 19. Employment-At-Will: Discontinuation of Policy.

Nothing in the Policy, or any of the communications or materials describing or implementing it, changes the employment-at-will relationship between Fannie Mae and its employees. The Company may discontinue the Policy at any time by giving employees 30 calendar days' written notice, but the Policy will continue to apply to all claims submitted for arbitration before or during the notice period.

### 20. Complete Agreement.

This Policy is the sole and complete agreement between Fannie Mae and its employees.

6



Revised April 2003

# JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

EMPLOYMENT ARBITRATION RULES & PROCEDURES

## Table of Contents



| | | |
|---|---|---|
| Rule 1. | Scope of Rules | 2 |
| Rule 2. | Party-Agreed Procedures | 2 |
| Rule 3. | Amendment of Rules | 2 |
| Rule 4. | Conflict with Law | 2 |
| Rule 5. | Commencing an Arbitration | 2 |
| Rule 6. | Administrative Conference | 3 |
| Rule 7. | Notice of Claims | 3 |
| Rule 8. | Changes of Claims | 4 |
| Rule 9. | Interpretation of Rules/Jurisdiction | 4 |
| Rule 10. | Representation | 4 |
| Rule 11. | Withdrawal from Arbitration | 4 |
| Rule 12. | *Ex Parte* Communications | 5 |
| Rule 13. | Arbitrator Selection and Replacement | 5 |
| Rule 14. | Preliminary Conference | 5 |
| Rule 15. | Exchange of Information | 6 |
| Rule 16. | Summary Disposition of a Claim or Issue | 6 |
| Rule 17. | Scheduling of Hearing | 6 |
| Rule 18. | Pre-Hearing Submissions | 7 |
| Rule 19. | Securing Witnesses and Documents for the Arbitration Hearing | 7 |
| Rule 20. | The Arbitration Hearing | 7 |
| Rule 21. | Waiver of Hearing | 8 |
| Rule 22. | The Award | 8 |
| Rule 23. | Enforcement of the Award | 9 |
| Rule 24. | Confidentiality and Privacy | 9 |
| Rule 25. | Waiver | 9 |
| Rule 26. | Settlement and Consent Award | 10 |
| Rule 27. | Sanctions | 10 |
| Rule 28. | Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability | 10 |
| Rule 29. | Fees | 10 |
| Rule 30. | Bracketed (or High-Low) Arbitration Option | 11 |
| Rule 31. | Final Offer (or Baseball) Arbitration Option | 11 |
| Rule 32. | Optional Arbitration Appeal Procedure | 11 |

JAMS   THE RESOLUTION EXPERTS

NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949-224-1810.

### Rule 1.   Scope of Rules

(a)  The JAMS Arbitration Rules and Procedures for Employment Disputes ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related.

(b)  The Parties shall be deemed to have made these Rules a part of their Arbitration agreement whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)  The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representative.

### Rule 2.   Party-Agreed Procedures

The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies including, without limitation, the JAMS Minimum Standards of Procedural Fairness for Employment Arbitrations, and Rules 13(h), 28 and 29. The Parties shall promptly notify the JAMS Case Manager of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

### Rule 3.   Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have specified another version of the Rules.

### Rule 4.   Conflict with Law

If any of these Rules, or a modification of these Rules agreed on by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern, and no other Rule will be affected.

### Rule 5.   Commencing an Arbitration

(a)  The Arbitration is deemed commenced when JAMS confirms in a Commencement Letter one of the following:

(i)  The submission to JAMS of a post-dispute Arbitration agreement fully executed by all Parties and that specifies JAMS administration or use of any JAMS Rules; or

(ii)  The submission to JAMS of a pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and which specifies JAMS administration or use of any JAMS Rules or which the Parties agree shall be administered by JAMS; or

(iii) The oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules, confirmed in writing by the Parties; or

(iv) A court order compelling Arbitration at JAMS.

(b)  The Commencement Letter shall confirm that one of the above requirements for commencement has been met. The date of commencement of the Arbitration is the date of the Commencement Letter.

(c)  If a Party who has signed a pre-dispute written contractual provision specifying these Rules or JAMS administration fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate and, pursuant to Rule 17, the Arbitrator shall schedule, and provide appropriate notice of a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The definition of "commencement" in these Rules is not intended to be applicable to any legal requirement, such as the statute of limitations or a contractual limitations period, unless actually so specified by that requirement.

2
*Revised 2003*

(e) If a Party contests the enforceability of an Arbitration agreement executed as a condition of initial or continued employment, JAMS will, upon notice of such dispute, defer administering the Arbitration or taking any other related steps for forty-five (45) calendar days, in order to allow the Party contesting the enforceability of the Arbitration agreement to seek judicial determination of the enforceability of the clause or arbitrability of the underlying issue. JAMS will comply with any such determination. If there is no judicial determination within a reasonable period of time after the receipt by JAMS of the Arbitration demand, JAMS will resume administering and conducting the Arbitration, including resolving questions of arbitrability pursuant to Rule 9.

(f) Service under these Rules is effected by providing one copy of the document with original signatures to each Party and two copies to the Case Manager. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document. Service by facsimile transmission is considered effective upon transmission, but only if followed within one week of delivery by service of an appropriate number of copies and originals by one of the other service methods.

## Rule 6. Administrative Conference

(a) The Case Manager may conduct an Administrative Conference with the Parties by telephone. The Administrative Conference may occur within seven (7) calendar days after the date of commencement of the Arbitration. Unless the Parties agree otherwise, if the Administrative Conference does not take place within the time specified above, the Case Manager shall proceed with the Arbitrator selection process pursuant to Rule 13 as if the Administrative Conference had, in fact, been held.

(b) The Case Manager shall answer any questions regarding these Rules and may discuss procedural matters such as the pleading or notice of claim sequence, Arbitrator selection, the Preliminary Conference process and the expectations of the Parties as to the length of the Arbitration Hearing. The Parties may agree to a date for the Hearing subject to Arbitrator availability. In the absence of agreement, the Hearing date shall be set by the Arbitrator pursuant to Rule 17.

(c) At the request of a Party and in the absence of Party agreement, JAMS may make a determination regarding the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(d) The Case Manager may convene, or the Parties may request, additional Administrative Conferences.

(e) During the Preliminary Conference, the Case Manager may ask the Parties if they agree to the Optional Appeal Procedure. (See Rule 22.) All Parties must agree in writing for the Optional Appeal Procedure to be effective. Once a Party has agreed to the Optional Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 11, from the Arbitration. The Parties may subsequently agree to an Optional Appeal Procedure at any time prior to the Arbitration Award becoming final pursuant to Rule 22.

## Rule 7. Notice of Claims

(a) If a matter has been submitted for Arbitration after litigation has been commenced in court regarding the same claim or dispute, the pleadings in the court case, including the complaint and answer (with affirmative defenses and counterclaims), may be filed with JAMS within fourteen (14) calendar days of the date of commencement, and if so filed, will be considered part of the record of the Arbitration. It will be assumed that the existence of such pleadings constitutes appropriate notice to the Parties of such claims, remedies sought, counterclaims and affirmative defenses. If necessary, such notice may be supplemented pursuant to Rule 7(b).

(b) If a matter has been submitted to JAMS prior to, or in lieu of, the filing of a case in court or prior to the filing of an answer, the Parties shall give each other notice of their respective claims, remedies sought, counterclaims and affirmative defenses (including jurisdictional challenges). Such notice may be served upon the other Parties and filed with JAMS, in the form of a demand for Arbitration,

3

Revised 2003

response or answer to demand for Arbitration, counterclaim or answer or response to counterclaim. Any pleading shall include a short statement of its factual basis.

(c) Notice of claims, remedies sought, counterclaims and affirmative defenses may be served simultaneously, in which case they should be filed with JAMS within fourteen (14) calendar days of the date of commencement of the Arbitration, or by such other date as the Parties may agree. The responding Parties may, however, in their sole discretion, wait to receive the notice of claim before serving any response, including counterclaims or affirmative defenses. In this case, the response, including counterclaims and affirmative defenses, should be served on the other Parties and filed with JAMS within fourteen (14) calendar days of service of the notice of claim. If the notice of claim has been served on the responding Parties prior to the date of commencement, the response, including counterclaims and affirmative defenses, shall be served within fourteen (14) calendar days from the date of commencement.

(d) Any Party that is a recipient of a counterclaim may reply to such counterclaim, including asserting jurisdictional challenges. In such case, the reply must be served on the other Parties and filed with JAMS within fourteen (14) calendar days of having received the notice of counterclaim. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of prior notice to the other Parties, unless all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

## Rule 8. Changes of Claims
After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted except with the Arbitrator's approval. A Party may request a Hearing on this issue. Each Party has the right to respond to any new claim in accordance with Rule 7(c).

## Rule 9.    Interpretation of Rules/ Jurisdiction
(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Whenever in these Rules a matter is to be determined by "JAMS" (such as in Rules 6(c), 9(d), 13(d), (f) or (h)), such determination shall be made in accordance with JAMS' administrative procedures.

(c) Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter unless the relevant law requires that a court make such determinations and subject to the provisions of Rule 5 (e).

(d) Disputes concerning the appointment of the Arbitrator and the venue of the Arbitration, if that determination is relevant to the selection of the Arbitrator, shall be resolved by JAMS.

(e) The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 20(i) or 22.

## Rule 10.    Representation
The Parties may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address and telephone and fax numbers of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

## Rule 11.    Withdrawal from Arbitration
(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5) except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counter-claim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and on the Arbitrator. However, the opposing Parties may, within fourteen (14) calendar days of service of notice of the withdrawal of the claim or counterclaim, request that the Arbitrator order that the withdrawal be with prejudice.

## Rule 12. *Ex Parte* Communications
No Party may have any *ex parte* communication with an Arbitrator regarding any issue related to the Arbitration. Any necessary *ex parte* communication with JAMS, whether before, during or after the Arbitration Hearing, shall be conducted through the Case Manager.

## Rule 13. Arbitrator Selection and Replacement
(a)   Unless the Arbitrator has been previously selected by agreement of the Parties, the Case Manager at the Administrative Conference may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)  If the Parties do not agree on an Arbitrator, the Case Manager shall send the Parties a list of at least five (5) Arbitrator candidates. The Case Manager shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate.

(c)   Within seven (7) calendar days of service by the Parties of the list of names, each Party may strike two (2) names, and shall rank the remaining Arbitrator candidates in order of preference. If each Party strikes different candidates, the remaining Arbitrator candidate will become the Arbitrator. If there is more than one candidate remaining after the Parties strike, the candidate with the highest total ranking by the Parties will become the Arbitrator.

(d)  If this process does not yield an Arbitrator, JAMS shall designate the Arbitrator.

(e)  If a Party fails to respond to the list of Arbitrator candidates within seven (7) calendar days of service by the Parties of the list, the Case Manager shall deem that Party to have accepted all of the Arbitrator candidates.

(f)  If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(g)  Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. The obligation of the Arbitrator to make all required disclosures continues throughout the Arbitration process.

(h)  At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination on such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the parties. That decision will be final.

## Rule 14. Preliminary Conference
At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)  The exchange of information in accordance with Rule 15 or otherwise;

(b)  The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)  The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

5
*Revised 2003*

JAMS   THE RESOLUTION EXPERTS

(d) The scheduling of the Hearing and any prehearing exchanges of information, exhibits, motions or briefs;

(e) The attendance of witnesses as contemplated by Rule 19;

(f) The scheduling of any dispositive motion pursuant to Rule 16;

(g) The premarking of exhibits; preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h) The form of the Award; and

(i) Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 15. Exchange of Information

(a) The Parties shall cooperate in good faith in the voluntary, prompt and informal exchange of all non-privileged documents and other information relevant to the dispute or claim immediately after commencement of the Arbitration.

(b) The Parties shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report that may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(c) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the avail-

ability of other discovery, and the burdensomeness of the request.

(d) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that have not been previously exchanged, or witnesses and experts not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(e) The Parties shall promptly notify the Case Manager when an unresolved dispute exists regarding discovery issues. The Case Manager shall arrange a conference with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 16. Summary Disposition of a Claim or Issue

(a) The Arbitrator has the discretion to decide a Motion for Summary Disposition that is limited to issues of law, provided other interested Parties have reasonable notice to respond to the motion.

(b) The Case Manager shall facilitate the Parties' agreement on a briefing schedule and record for the Motion. If no agreement is reached, the Arbitrator shall set the briefing and Hearing schedule and contents of the record.

## Rule 17. Scheduling of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date and time of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to answer a claim and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the

Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date unless the law of the relevant jurisdiction allows for shorter notice.

## Rule 18. Pre-Hearing Submissions

(a)  Subject to any schedule adopted in the Preliminary Conference (Rule 14), at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall exchange a list of the witnesses they intend to call, including any experts, a short description of the anticipated testimony of each such witness, an estimate of the length of the witness's direct testimony, and a list of exhibits. In addition, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall identify all exhibits intended to be used at the Hearing and exchange copies of such exhibits to the extent that any such exhibit has not been previously exchanged. The Parties should pre-mark exhibits and shall attempt themselves to resolve any disputes regarding the admissibility of exhibits prior to the Hearing. The list of witnesses, with the description and estimate of the length of their testimony and the copies of all exhibits that the Parties intend to use at the Hearing, in pre-marked form, should also be provided to JAMS for transmission to the Arbitrator, whether or not the Parties have stipulated to the admissibility of all such exhibits.

(b)  The Arbitrator may require that each Party submit concise written statements of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties, at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 19. Securing Witnesses and Documents for the Arbitration Hearing

At the written request of another Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of sub-

poena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents. Pre-issued subpoenas may be used in jurisdictions which permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party may file an objection with the Arbitrator, who will promptly rule on the objection; weighing both the burden on the producing Party and the need of the proponent for the witness or other evidence.

## Rule 20. The Arbitration Hearing

(a)  The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual Party with information about a significant issue.

(b)  The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)  The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise in the discretion of the Arbitrator.

(d)  Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)  The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as the Arbitrator deems appropriate.

7

*Revised 2003*

JAMS THE RESOLUTION EXPERTS

(f) The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g) The Hearing or any portion thereof may be conducted telephonically with the agreement of the Parties or in the discretion of the Arbitrator.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, the Arbitrator shall declare the Hearing closed. Post-Hearing briefs will not be allowed, unless the Parties and the Arbitrator agree that they are necessary. The Arbitrator may defer the closing of the Hearing until a date agreed upon by the Arbitrator and the Parties, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter. If post-Hearing briefs are to be submitted the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs.

(i) At any time before the Award is rendered, the Arbitrator may, on his or her own initiative or on application of a Party for good cause shown, re-open the Hearing. If the Hearing is re-opened and the re-opening prevents the rendering of the Award within the time limits specified by these Rules, the time limits will be extended for an appropriate period of time.

(j) The Arbitrator may proceed with the Hearing in the absence of a Party who executed an Arbitration agreement, or who is otherwise bound to arbitrate, and who after receiving notice of the Hearing pursuant to Rule 17, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k) (i)    Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)  If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding unless the Party arranging for the stenographic record either agrees to provide access to the stenographic record at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)  If the Parties agree to an Optional Arbitration Appeal Procedure (see Rule 32), they shall ensure that a stenographic or other record is made of the Hearing and shall share the cost of that record.

(iv)  The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 21. Waiver of Hearing
The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 22. The Award
(a)   Absent good cause for an extension, and except as provided in Rules 20(i) or 29(d), the Arbitrator shall render the Award within thirty (30) calendar days after the date of the closing of the Hearing (as defined in Rule 20(h)) or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties. The Arbitrator shall provide the Award to the Case Manager for issuance in accordance with this rule.

(b) The Arbitrator may grant any remedy or relief allowed by the applicable law, including multiple or exemplary damages, pre- or post-judgment interest and attorneys' fees and expenses. The authority to Award any remedy allowed by the applicable law is subject to whatever limitations, if any, exist in the appli-

JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

cable law on such remedies. The Arbitrator is also authorized to grant final or interlocutory relief, including injunctive relief, unless the Parties agree that certain relief may only be awarded by a court or as a matter of applicable law certain relief may only be awarded by a court.

(c)  In addition to the final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(d)  Interim Measures. The Arbitrator may take whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(e)  In any Award, order or ruling, the Arbitrator may also assess Arbitration fees, Arbitrator compensation and expenses if provided by agreement of the Parties, allowed by applicable law or pursuant to Rule 29 (b), in favor of any Party.

(f)  The Award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the award is based. The Parties may agree to any other form of award, unless the arbitration is based on an arbitration agreement that is required as a condition of employment.

(g)  After the Award has been rendered, and provided the Parties have complied with Rule 29, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. Mail. It need not be sent certified or registered.

(h)  Within seven (7) calendar days after issuance of the Award, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational,

typographical or other error in an Award (including the reallocation of fees pursuant to Rule 29), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days in which to file any objection. The Arbitrator may make any necessary and appropriate correction to the Award within fourteen (14) calendar days of receiving a request or seven (7) calendar days after the Arbitrator's proposal to do so. The corrected Award shall be served upon the Parties in the same manner as the Award.

(i)  The Award is considered final, for purposes of either an Optional Arbitration Appeal Procedure pursuant to Rule 32 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 23, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 23. Enforcement of the Award
Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 *et seq.* or applicable state law.

## Rule 24. Confidentiality and Privacy
(a)  The Case Manager and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)  The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)  Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 25. Waiver
(a)  If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will

THE RESOLUTION EXPERTS

be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 26. Settlement and Consent Award

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree pursuant to Rule 26(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 27. Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules. These sanctions may include, but are not limited to,

assessment of costs, exclusion of certain evidence, or in extreme cases ruling on an issue submitted to Arbitration adversely to the Party who has failed to comply.

## Rule 28. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a) The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b) The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside Parties arising from the Arbitration.

(c) The Parties agree that neither the Arbitrator, Case Manager nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, Case Manager nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including but not limited to a recusal by the Arbitrator.

## Rule 29. Fees

(a) Except as provided in paragraph (b) below, unless the Parties have agreed to a different allocation, each Party shall pay its *pro-rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. JAMS agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration.

(b) If an arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the JAMS Case Management Fee. JAMS does not preclude an

THE RESOLUTION EXPERTS ⊚ JAMS

employee from contributing to administrative and arbitrator fees and expenses.

(c) JAMS requires that the Parties deposit the fees and expenses for the Arbitration prior to the Hearing. JAMS may waive the deposit requirement upon a showing of good cause.

(d) JAMS may defer issuance of an Arbitration Award rendered by the Arbitrator if any and/or all outstanding invoices are not paid. If JAMS declines to issue an Arbitration Award in accordance with this Rule, it shall not be issued to any Party.

## Rule 30. Bracketed (or High-Low) Arbitration Option

(a) At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify the Case Manager, and provide to the Case Manager a copy of their written agreement setting forth the agreed-upon maximum and minimum amounts.

(b) The Case Manager shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c) The Arbitrator shall render the Award in accordance with Rule 22.

(d) In the event that the Award of the Arbitrator is in between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 31. Final Offer (or Baseball) Arbitration Option

(a) Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing,

the Parties shall exchange and provide to the Case Manager written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 22 (b). The Case Manager shall promptly provide a copy of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to the Case Manager who shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b) If the Arbitrator has been informed of the written proposals, in rendering the Award the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 22(b). This provision modifies Rule 22(f) in that no written statement of reasons shall accompany the Award.

(c) If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 22, except that the Award shall thereafter be corrected to conform to the closest of the last proposals, and the closest of the last proposals will become the Award.

(d) Other than as provided herein, the provisions of Rule 22 shall be applicable.

## Rule 32. Optional Arbitration Appeal Procedure

At any time before the Award becomes final pursuant to Rule 22, the Parties may agree to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 11, from the Arbitration.

JAMS EMPLOYMENT ARBITRATION RULES & PROCEDURES

**11**
*Revised 2003*

# PROOF OF SERVICE

I am over the age of 18 and not a party to the within action. I am employed by JAMS. My business address is 555 13th Street, NW, Suite 400 West, Washington, DC 20004

I hereby certify that on November 16, 2004, I served the foregoing document described as **Notice of Commencement of Arbitration** in **Richardson, Crystal / FannieMae**, Reference Number 1410003536, upon each of the parties listed below:

Valaree M Moodee Esq.
Fannie Mae
Mail Stop: 1H2S-05 (P. Denson)
3900 Wisconsin Ave., NW
Washington, DC 20016-2892  USA

Charles E. Joseph Esq.
Joseph & Herzfeld
757 Third Avenue
25th Floor
New York, NY 10017  USA

(X)  **By Mail:** as follows:  I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Services.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Washington, D.C.

(X)  **By Facsimile Transmission:**  I caused the above-referenced document(s) to be transmitted to the above named person(s) at the telecopy numbers listed.

I declare under penalty of perjury that the above is true and correct.

*Karen M. Cleet*

**Karen M. Cleet**
**Case Manager**
KCleet@jamsadr.com

# EXHIBIT 3
# TO
# ATTACHMENT B



www.jamsadr.com     **THE RESOLUTION EXPERTS**     **Offices Nationwide**

# Fax Cover

| | | | |
|---|---|---|---|
| **To:** | Deborah Kelly, Esq. | **Phone:** 202-785-9700 | **Fax:** (202) 887-0689 |
| | *Dickstein, Shapiro, Morin & Oshinsky* | | |
| | David Schur, Esq. | 202-785-9700 | (202) 887-0689 |
| | *Dickstein, Shapiro, Morin & Oshinsky* | | |
| | Charles Joseph, Esq. | 212-688-5640 | 212-688-2548 |
| | *Joseph & Herzfeld* | | |

**From:** Karen Cleet     **Phone:** 202-533-2019

**Date:** Monday, November 22, 2004     **Pages (including Cover):**   2

**Case Name:** Richardson, Crystal vs. FannieMae

**Reference:** 1410003536

---

**Comments:**

Dear Counsel:

    Here is a new strike and rank list which reflects the change from Edna Povich to Judge Levie. Please complete the attached and return it no later than close of business on Tuesday, November 23, 2004. If you have any questions, please contact me at (202) 533-2019. Thank you!

Sincerely,

Karen Cleet
Case Manager

This facsimile transmission is confidential. If you have received this transmission in error, please notify the sender at the number listed above and discard the transmission. Thank you for your assistance.

555 13th Street, NW • Suite 400 West • Washington, DC 20004 • TEL 202.942.9160 • FAX 202.942.9166

# ARBITRATION STRIKE AND RANK LIST

_____    **Homer LaRue, Esq.**

_____    **Marvin E. Johnson, Esq.**

_____    **Hon. Richard A. Levie (Ret.)**

_____    **Irene Ziebarth, Esq.**

_____    **Jerry Roscoe, Esq.**

# EXHIBIT 4
# TO
# ATTACHMENT B



www.jamsadr.com          THE RESOLUTION EXPERTS          Offices Nationwide

# Fax Cover

**To:** Deborah Kelly, Esq.              **Phone:** 202-785-9700          **Fax:** (202) 887-0689
   *Dickstein, Shapiro, Morin & Oshinsky*

   David Schur, Esq.                            202-785-9700                (202) 887-0689
   *Dickstein, Shapiro, Morin & Oshinsky*

   Valaree Moodee, Esq.                      (202) 752-7000              202-752-2103
   *Fannie Mae*

   Charles Joseph, Esq.                       212-688-5640               212-688-2548
   *Joseph & Herzfeld*

**From:** Karen Cleet                     **Phone:** 202-533-2019

**Date:** Monday, December 06, 2004      **Pages (Including Cover):**    4

**Case Name:** Richardson, Crystal vs. FannieMae

**Reference:** 1410003536

---

**Comments:**

Dear Counsel:

   Attached you will find a notice of appointment of arbitrator in the above case along with a signed disclosure form. If you have any questions, please contact me at (202) 533-2019. Thank you!

Sincerely,

Karen Cleet
Case Manager

This facsimile transmission is confidential. If you have received this transmission in error, please notify the sender at the number listed above and discard the transmission. Thank you for your assistance.

555 13th Street, NW • Suite 400 West • Washington, DC 20004 • TEL 202.942.9160 • FAX 202.942.9186



THE RESOLUTION EXPERTS
## APPOINTMENT OF ARBITRATOR

December 6, 2004

Valaree M Moodee Esq.
Fannie Mae
Mail Stop: 1H2S-05 (P. Denson)
3900 Wisconsin Ave., NW
Washington, DC 20016-2892  USA

Charles E. Joseph Esq.
Joseph & Herzfeld
757 Third Avenue
25th Floor
New York, NY 10017  USA

Déborah P. Kelly Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

David T. Schur Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

Re: Arbitration Matter between Richardson, Crystal and FannieMae;
1410003536

Dear Party Representatives:

**Hon. Richard A. Levie (Ret.)** has been appointed as Arbitrator in the above-referenced matter.
Please note that in accordance with the JAMS Employment Arbitration Rules and Fannie Mae's
Dispute Resolution Policy, no party may have *ex-parte* communications with the Arbitrator. Any
necessary communication with the Arbitrator must be initiated through the case manager.

Judge Levie shall bill at an hourly rate of $550. JAMS may also reassess the case management
fee based on the number of hours of service.

Attached you will find a signed disclosure form from Judge Levie regarding the above case. If
either side has any questions or concerns regarding the disclosures, please contact me as soon as
possible at (202) 533-2019 or via e-mail at kcleet@jamsadr.com. Thank you!

Sincerely,

Karen M. Cleet

Karen M. Cleet
Case Manager

**JAMS**
THE RESOLUTION EXPERTS

# JAMS
# ARBITRATOR CANDIDATE
# DISCLOSURE FORM

Name of Arbitrator Candidate: <u>Hon. Richard A. Levie (Ret.)</u>

You have been selected as a candidate to arbitrate a dispute involving the following parties and counsel:

<u>Richardson, Crystal / FannieMae</u>

represented by:
Valarce M Moodee Esq.
Fannie Mae
Mail Stop: 1H2S-05 (P. Denson)
3900 Wisconsin Ave., NW
Washington, DC 20016-2892  USA

Charles E. Joseph Esq.
Joseph & Herzfeld
757 Third Avenue
25th Floor
New York, NY 10017  USA

Deborah P. Kelly Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

David T. Schur Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

In order that the parties may have complete confidence in the Arbitrator's neutrality, it is important that you disclose any past or present relationship with the parties or their counsel, whether direct or indirect, whether financial, professional, social or other kind. You should resolve all questions in favor of disclosure. This form will be provided to the parties. If you are selected to arbitrate this dispute, you have a continuing obligation to disclose any additional relationships which may arise during the course of the Arbitration.

_____ I have nothing to disclose.

___✓___ I hereby disclose the following:

I have mediated a case in which Ms. Kelly represented one of the parties. Ms. Kelly & I are members of a Bar-Bench organization with almost 400 members. I know other members of Dickstein professionally, but have no social relationships with such persons. The matters disclosed will not affect my ability to be fair and impartial in this matter.

Signed: _Richard A Levie_    Date: _12/3/2004_

# PROOF OF SERVICE

I am over the age of 18 and not a party to the within action. I am employed by JAMS. My business address is 555 13th Street, NW, Suite 400 West, Washington, DC 20004

I hereby certify that on December 6, 2004, I served the foregoing document described as **Notice of Appointment of Arbitrator in Richardson, Crystal / FannieMae**, Reference Number 1410003536, upon each of the parties listed below:

Valaree M Moodee Esq.
Fannie Mae
Mail Stop: 1H2S-05 (P. Denson)
3900 Wisconsin Ave., NW
Washington, DC 20016-2892 USA

Charles E. Joseph Esq.
Joseph & Herzfeld
757 Third Avenue
25th Floor
New York, NY 10017 USA

Deborah P. Kelly Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

David T. Schur Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526

(X) **By Mail:** as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Services. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Washington, D.C.

(X) **By Facsimile Transmission:** I caused the above-referenced document(s) to be transmitted to the above named person(s) at the telecopy numbers listed.

I declare under penalty of perjury that the above is true and correct.

*Karen M. Cleet*

**Karen M. Cleet**
**Case Manager**
KCleet@jamsadr.com

**EXHIBIT 5**

**TO**

**ATTACHMENT B**



www.jamsadr.com   **THE RESOLUTION EXPERTS**   Offices Nationwide

# Fax Cover

**To:** Deborah Kelly, Esq.   **Phone:** 202-785-9700   **Fax:** (202) 887-0689
*Dickstein, Shapiro, Morin & Oshinsky*

David Schur, Esq.   202-785-9700   (202) 887-0689
*Dickstein, Shapiro, Morin & Oshinsky*

Valaree Moodee, Esq.   (202) 752-7000   202-752-2103
*Fannie Mae*

Charles Joseph, Esq.   212-688-5640   212-688-2548
*Joseph & Herzfeld*

**From:** Joseph Edmonds   **Phone:** 202-942-9180

**Date:** Monday, January 03, 2005   **Pages (Including Cover):** 3

**Case Name:** Richardson, Crystal vs. FannieMae

**Reference:** 1410003536

---

**Comments:**

Dear Counsel:

   Please find the attached NOTICE OF CONFERENCE CALL in the above-captioned arbitration.

Best,

Joe Edmonds
Case Manager

This facsimile transmission is confidential. If you have received this transmission in error, please notify the sender at the number listed above and discard the transmission. Thank you for your assistance.

555 13th Street, NW • Suite 400 West • Washington, DC 20004 • TEL 202.942.9180 • FAX 202.942.9186



**THE RESOLUTION EXPERTS**

NOTICE TO ALL COUNSEL (Please see Service List)                    January 3, 2005

RE:    **Richardson, Crystal / FannieMae**
       Reference #: 1410003536

Dear Counsel:

This letter will confirm that a conference call in the above-referenced matter has been scheduled as follows:

DATE:          Friday, January 21, 2004 at 2:30 PM          *CALL-IN #*
                                                             *126880*

PANELIST:    Hon. Richard A. Levie (Ret.)

Please dial 1-877-696-5267 and inform the conference call operator that you are calling for the JAMS call with Hon. Richard A. Levie (Ret.).

We appreciate your business and as *The Resolution Experts* we take pride in helping you to resolve your dispute. If you have any questions, please feel free to contact me directly at 202-942-9180.

Very truly yours,

Joseph C Edmonds
Case Manager
JEdmonds@jamsadr.com

# PROOF OF SERVICE

I am over the age of 18 and not a party to the within action. I am employed by JAMS. My business address is 555 13th Street, NW, Suite 400 West, Washington, DC 20004

I hereby certify that on January 3, 2005, I served the foregoing document described as **NOTICE OF CONFERENCE CALL** in **Richardson, Crystal / FannieMae**, Reference Number 1410003536, upon each of the parties listed below:

Valaree M Moodee Esq.
Fannie Mae
Mail Stop: 1H2S-05 (P. Denson)
3900 Wisconsin Ave., NW
Washington, DC 20016-2892  USA
Tel: 202-752-3098
Fax: 202-752-2103

Charles E. Joseph Esq.
Joseph & Herzfeld
757 Third Avenue
25th Floor
New York, NY 10017  USA
Tel: 212-688-5640
Fax: 212-688-2548

Deborah P. Kelly Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526
Tel: 202-775-4772
Fax: (202) 887-0689

David T. Schur Esq.
Dickstein, Shapiro, Morin & Oshinsky
2101 L Street, NW
Washington, DC 20037-1526
Tel: 202-775-4721
Fax: (202) 887-0689

( x ) **By First Class Mail:** as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Services. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Washington, D.C.

( x ) **By Facsimile Transmission:** I caused the above-referenced document(s) to be transmitted to the above named person(s) at the telecopy numbers listed.

I declare under penalty of perjury that the above is true and correct.

Joseph C. Edmonds
Case Manager
JEdmonds@jamsadr.com

# EXHIBIT 6
# TO
# ATTACHMENT B

**Schur, David**

| | |
|---|---|
| **From:** | Charles Joseph [charles@jhllp.com] |
| **Sent:** | Tuesday, February 01, 2005 3:41 PM |
| **To:** | Schur, David; 'Edmonds Joseph' |
| **Cc:** | Kelly, Deborah |
| **Subject:** | RE: Richardson, Crystal vs. Fannie Mae |

Defendant has proposed a resolution. I will advise my client to accept. I have not been able to reach her. In light of this, and my belief that she will accept, I think it the best use of everyone's time to further adjourn. If I am ultimately unable to reach my client, arbitration would in any event serve no purpose.

---

**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Tuesday, February 01, 2005 3:19 PM
**To:** Edmonds Joseph
**Cc:** Kelly, Deborah; Charles Joseph
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Hi Joe:
Fannie Mae is available to do the call Wed (tomorrow) anytime after 2pm, if this comports with everyone's schedules.

Thanks,
David Schur

-----Original Message-----
**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Mon 1/31/2005 9:50 AM
**To:** Schur, David
**Cc:** Kelly, Deborah; Charles Joseph
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Thanks for your VM this morning, Mr. Schur. I can't set at 10AM call at this late hour. The Judge has some availability on either Tuesday AM or Wednesday PM of this week. Please let me know if either of these days works for you and, by copy, opposing counsel. Thanks much - Joe

-----Original Message-----
**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Friday, January 28, 2005 5:14 PM
**To:** Edmonds Joseph; Charles Joseph
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

10AM Monday works for Fannie Mae

-----Original Message-----
**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Fri 1/28/2005 11:25 AM
**To:** Schur, David; Charles Joseph
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

The Judge is open for Monday. Does 10AM work for parties?

-----Original Message-----
**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Wednesday, January 26, 2005 3:51 PM
**To:** Edmonds Joseph; Charles Joseph
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Joe:
We are unable to do the phone call this Friday AM, although we could do Monday AM (1/31), assuming that comports with everyone else's schedules.


David T. Schur
Dickstein Shapiro Morin & Oshinsky
2101 L Street NW
Washington, DC 20037
Phone: 202-775-4721
Fax:  202-887-0689

> -----Original Message-----
> **From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
> **Sent:** Monday, January 24, 2005 11:55 AM
> **To:** Edmonds Joseph; Charles Joseph ; Schur, David
> **Cc:** Kelly, Deborah
> **Subject:** RE: Richardson, Crystal vs. Fannie Mae
>
> Dear Counsel:  Wanted to follow up regarding your progress towards settlement.  Judge Levie would like to keep some AM time open on the 28th, so that he can discuss the case with parties, if it hasn't settled by then.  The Judge is open all morning on Friday.  Will 10AM work for counsel?  Thanks again - Joe
>
> > -----Original Message-----
> > **From:** Edmonds Joseph
> > **Sent:** Thursday, January 20, 2005 12:31 PM
> > **To:** 'Charles Joseph '; 'Schur, David'
> > **Cc:** 'Kelly, Deborah'; Levie Richard
> > **Subject:** RE: Richardson, Crystal vs. Fannie Mae
> >
> > Great.  Let's reset for Friday, January 28th, 2005.  The Judge can do 2:30 on that day, as well.  Does that match with your schedules too?
> >
> > Thanks - Joe
> >
> > > -----Original Message-----
> > > **From:** Charles Joseph [mailto:charles@jhllp.com]
> > > **Sent:** Thursday, January 20, 2005 12:09 PM
> > > **To:** Edmonds Joseph; 'Schur, David'
> > > **Cc:** 'Kelly, Deborah'; Levie Richard
> > > **Subject:** RE: Richardson, Crystal vs. Fannie Mae
> > >
> > > I ma in agreement

7/12/2005

**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Thursday, January 20, 2005 12:13 PM
**To:** Schur, David
**Cc:** Kelly, Deborah; charles@jhllp.com; Levie Richard
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

I'm sure postponing the call won't be a problem, as long as parties are in agreement that it should be postponed. Mr. Joseph, are you in agreement with the below?

Best regards,
Joe Edmonds

-----Original Message-----
**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Wednesday, January 19, 2005 7:02 PM
**To:** Edmonds Joseph
**Cc:** Kelly, Deborah; Schur, David
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Mr. Edmonds:

In conferring with opposing counsel per Judge Levie's request, it now appears likely that this case will be resolved soon, but given tomorrow's inauguration and office closures, probably not before this Friday's conference call. In light of all of this, would it be possible to postpone Friday's call for one week, to give us time to see if we can finally resolve this matter?

If you have any questions, please do not hesitate to call me.

Thanks,


David T. Schur
Dickstein Shapiro Morin & Oshinsky
2101 L Street NW
Washington, DC 20037
Phone: 202-775-4721
Fax:   202-887-0689

-----Original Message-----
**From:** Edmonds Joseph
[mailto:JEdmonds@JAMSADR.com]
**Sent:** Tuesday, January 18, 2005 10:26 AM
**To:** charles@jhllp.com; Kelly, Deborah;
Schur, David

7/12/2005

**Subject:** Richardson, Crystal vs. Fannie Mae

Dear Counsel:  Judge Levie has asked that you confer on the following points in advance of Friday's 2:30 conference call in the above matter.  Please let me know, if you have questions about any of the following.

Best regards,

Joe Edmonds
Case Manager

**Proposed Conference Call Agenda**
**Richardson v. Fannie Mae**
**1410003536**

1.  Applicable documents:

    - Demand
    - Response
    - Counterclaim, if any;

2.  Parties:

    - Are all necessary/appropriate parties presently included in the arbitration?

3.  Claims/Counterclaims:

    - Specificity of issues
    - Arbitrability of all claims/counterclaims

4.  Applicable substantive law:

5.  Applicable rules:

6.  Anticipated dispositive motions

    - Nature and timing
    - Any discovery necessary for any such motions

- Scheduling of any hearing on such motions

7. <u>Discovery</u>

- Compliance with JAMS Employment Rule 15 / Fannie Mae's Dispute Resolution Policy at ¶ 10
- Any agreed upon requests for modification of JAMS Employment Rule 15 or Fannie Mae's Dispute Resolution Policy at ¶ 10
- Any non-agreed upon requests for modification of JAMS Employment Rule 15 or Fannie Mae's Dispute Resolution Policy at ¶ 10
- Schedule for discovery
- Use of expert witnesses – timing of designation & exchange of reports
- Discovery disputes

  a. Efforts to resolve – parties meet and confer (telephonica or in-person)

  b. Submission of discovery disputes to the Arbitrator

  - brief letter or mem form.

  - reque oppo & reply

-
oral
argu
(?) –
telep
-
persc

8. <u>Pre-hearing matters</u>:

- Timing and mechanics for identification and introduction of non-impeachment exhibits (non-objected to exhibits deemed admitted)
- Preparation and pre-marking of joint exhibits
- Exchange of witness lists
- Use of pre-hearing memoranda

9. .<u>Hearing matters</u>: (JAMS Employment Rule 19-20 / Fannie Mae Policy at ¶ 12)

- Scheduling
- Location – Washington, DC or other location agreed upon by the parties
- Recordation of the proceedings – tape/stenographic – costs
- Attendance of witnesses (JAMS Employment Rule 19-20)
- Presentation of witness testimony via telephone, video deposition, video conferencing
- Closing arguments/post-hearing briefs
- Closing of the record

10. <u>Award</u>

- Timing of issuance
- Form

- Provision for allocation of fees and/or costs

11. <u>Administrative matters</u>:

- Communication through ??
- Method of service
- Additional electronic service on the Arbitrator

---

Joseph C. Edmonds
Case Manager / AHLA ADR Service Program Director
JAMS - The Resolution Experts
555 13th Street, NW #400W
Washington, DC 20004
Main: 202.942.9180 (ext. 524)
Facsimile: 202.942.9186

Need a commercial clause??
Visit:
http://www.jamsadr.com/adrtips/clauses.asp

--------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com
========================================================

--------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail

message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

---------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

---------------------------------------------------------

This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

**Schur, David**

| | |
|---|---|
| **From:** | Edmonds Joseph [JEdmonds@JAMSADR.com] |
| **Sent:** | Tuesday, February 01, 2005 5:49 PM |
| **To:** | Charles Joseph ; Schur, David |
| **Cc:** | Kelly, Deborah |
| **Subject:** | RE: Richardson, Crystal vs. Fannie Mae |

Thank you all. I will not make further scheduling attempts in this matter until I receive word about the proposed settlement.

Best regards,
Joe

-----Original Message-----
**From:** Charles Joseph [mailto:charles@jhllp.com]
**Sent:** Tuesday, February 01, 2005 3:41 PM
**To:** 'Schur, David'; Edmonds Joseph
**Cc:** 'Kelly, Deborah'
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Defendant has proposed a resolution. I will advise my client to accept. I have not been able to reach her. In light of this, and my belief that she will accept, I think it the best use of everyone's time to further adjourn. If I am ultimately unable to reach my client, arbitration would in any event serve no purpose.

**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Tuesday, February 01, 2005 3:19 PM
**To:** Edmonds Joseph
**Cc:** Kelly, Deborah; Charles Joseph
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Hi Joe:
Fannie Mae is available to do the call Wed (tomorrow) anytime after 2pm, if this comports with everyone's schedules.

Thanks,
David Schur

-----Original Message-----
**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Mon 1/31/2005 9:50 AM
**To:** Schur, David
**Cc:** Kelly, Deborah; Charles Joseph
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Thanks for your VM this morning, Mr. Schur. I can't set at 10AM call at this late hour. The Judge has some availability on either Tuesday AM or Wednesday PM of this week. Please let me know if either of these days works for you and, by copy, opposing counsel. Thanks much - Joe

-----Original Message-----
**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Friday, January 28, 2005 5:14 PM
**To:** Edmonds Joseph; Charles Joseph

**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

10AM Monday works for Fannie Mae

-----Original Message-----
**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Fri 1/28/2005 11:25 AM
**To:** Schur, David; Charles Joseph
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

The Judge is open for Monday.  Does 10AM work for parties?

-----Original Message-----
**From:** Schur, David [mailto:SchurD@dsmo.com]
**Sent:** Wednesday, January 26, 2005 3:51 PM
**To:** Edmonds Joseph; Charles Joseph
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Joe:
We are unable to do the phone call this Friday AM, although we could do
Monday AM (1/31), assuming that comports with everyone else's schedules.


David T. Schur
Dickstein Shapiro Morin & Oshinsky
2101 L Street NW
Washington, DC 20037
Phone: 202-775-4721
Fax:   202-887-0689

-----Original Message-----
**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Monday, January 24, 2005 11:55 AM
**To:** Edmonds Joseph; Charles Joseph ; Schur, David
**Cc:** Kelly, Deborah
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Dear Counsel:  Wanted to follow up regarding your progress towards settlement.
Judge Levie would like to keep some AM time open on the 28th, so that he can
discuss the case with parties, if it hasn't settled by then.  The Judge is open all
morning on Friday.  Will 10AM work for counsel?  Thanks again - Joe

-----Original Message-----
**From:** Edmonds Joseph
**Sent:** Thursday, January 20, 2005 12:31 PM
**To:** 'Charles Joseph '; 'Schur, David'
**Cc:** 'Kelly, Deborah'; Levie Richard
**Subject:** RE: Richardson, Crystal vs. Fannie Mae

Great.  Let's reset for Friday, January 28th, 2005.  The Judge
can do 2:30 on that day, as well.  Does that match with your

schedules too?

Thanks - Joe

> -----Original Message-----
> **From:** Charles Joseph [mailto:charles@jhllp.com]
> **Sent:** Thursday, January 20, 2005 12:09 PM
> **To:** Edmonds Joseph; 'Schur, David'
> **Cc:** 'Kelly, Deborah'; Levie Richard
> **Subject:** RE: Richardson, Crystal vs. Fannie Mae
>
> I ma in agreement

---

> **From:** Edmonds Joseph
> [mailto:JEdmonds@JAMSADR.com]
> **Sent:** Thursday, January 20, 2005 12:13 PM
> **To:** Schur, David
> **Cc:** Kelly, Deborah; charles@jhllp.com; Levie
> Richard
> **Subject:** RE: Richardson, Crystal vs. Fannie Mae
>
> I'm sure postponing the call won't be a problem, as
> long as parties are in agreement that it should be
> postponed.  Mr. Joseph, are you in agreement with
> the below?
>
> Best regards,
> Joe Edmonds
>
>> -----Original Message-----
>> **From:** Schur, David
>> [mailto:SchurD@dsmo.com]
>> **Sent:** Wednesday, January 19, 2005 7:02
>> PM
>> **To:** Edmonds Joseph
>> **Cc:** Kelly, Deborah; Schur, David
>> **Subject:** RE: Richardson, Crystal vs. Fannie
>> Mae
>>
>> Mr. Edmonds:
>>
>> In conferring with opposing counsel
>> per Judge Levie's request, it now
>> appears likely that this case will be
>> resolved soon, but given tomorrow's
>> inauguration and office closures,
>> probably not before this Friday's
>> conference call.  In light of all of this,
>> would it be possible to postpone
>> Friday's call for one week, to give us
>> time to see if we can finally resolve
>> this matter?

If you have any questions, please do not hesitate to call me.

Thanks,

David T. Schur
Dickstein Shapiro Morin & Oshinsky
2101 L Street NW
Washington, DC 20037
Phone: 202-775-4721
Fax:  202-887-0689

-----Original Message-----
**From:** Edmonds Joseph
[mailto:JEdmonds@JAMSADR.com]
**Sent:** Tuesday, January 18, 2005
10:26 AM
**To:** charles@jhllp.com; Kelly,
Deborah; Schur, David
**Subject:** Richardson, Crystal vs.
Fannie Mae

Dear Counsel:  Judge Levie has
asked that you confer on the
following points in advance of
Friday's 2:30 conference call in
the above matter.  Please let me
know, if you have questions about
any of the following.

Best regards,

Joe Edmonds
Case Manager

**Proposed Conference Call
Agenda
Richardson v. Fannie Mae
1410003536**

1.  Applicable documents:

    • Demand
    • Response
    • Counterclaim,
    if any;

2. <u>Parties</u>:

   - Are all necessary/appropria parties presently included in the arbitration?

3. <u>Claims/Counterclaims</u>:

   - Specificity of issues
   - Arbitrability of all claims/counterclaim

4. <u>Applicable substantive law</u>:

5. <u>Applicable rules</u>:

6. <u>Anticipated dispositive motions</u>

   - Nature and timing
   - Any discovery necessary for any such motions
   - Scheduling of any hearing on such motions

7. <u>Discovery</u>

   - Compliance with JAMS Employment Rule 15 / Fannie Mae's Dispute Resolution Policy at ¶ 10
   - Any agreed upon requests for modification of JAMS Employment Rule 15 or Fannie Mae's Dispute Resolution Policy at ¶ 10
   - Any non-

agreed upon requests for modification of JAMS Employment Rule 15 or Fannie Mae's Dispute Resolution Policy at ¶ 10

• Schedule for discovery

• Use of expert witnesses – timing of designation & exchange of reports

• Discovery disputes

a. Effor to resol – partic meet and conf (telep or in-perso

b. Subn of disco dispu to the Arbit

8. Pre-hearing matters:

- Timing and mechanics for identification and introduction of non-impeachment exhibits (non-objected to exhibits deemed admitted)
- Preparation and pre-marking of joint exhibits
- Exchange of witness lists
- Use of pre-hearing memoranda

9. .Hearing matters: (JAMS Employment Rule 19-20 / Fannie Mae Policy at ¶ 12)

- Scheduling
- Location – Washington, DC or other location agreed upon by the parties
- Recordation of the proceedings – tape/stenographic – costs
- Attendance of witnesses (JAMS Employment Rule 19-20)
- Presentation of witness testimony via telephone, video deposition, video conferencing
- Closing

arguments/post-hearing briefs
- Closing of the record

10. Award

- Timing of issuance
- Form
- Provision for allocation of fees and/or costs

11. Administrative matters:

- 
Communication through ??
- Method of service
- Additional electronic service on the Arbitrator

Joseph C. Edmonds
Case Manager / AHLA ADR Service Program Director
JAMS - The Resolution Experts
555 13th Street, NW #400W
Washington, DC 20004
Main: 202.942.9180 (ext. 524)
Facsimile: 202.942.9186

Need a commercial clause??
Visit:
http://www.jamsadr.com/adrtips/clauses.a

--------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other privileges. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, you have received this communication in error, and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the

sender immediately by reply e-mail message and permanently delete the
original message.

To reply to our email administrator directly, send an email to
postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

----------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the
addressee(s) named above. This communication may contain material protected by attorney-client, work
product, or other privileges. If you are not the intended recipient or person responsible for delivering this
confidential communication to the intended recipient, you have received this communication in error,
and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail
message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any
communication that is created, received, or sent on its network. If you have received this confidential
communication in error, please notify the sender immediately by reply e-mail message and permanently
delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

----------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the
addressee(s) named above. This communication may contain material protected by attorney-client, work
product, or other privileges. If you are not the intended recipient or person responsible for delivering this
confidential communication to the intended recipient, you have received this communication in error,
and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail
message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any
communication that is created, received, or sent on its network. If you have received this confidential
communication in error, please notify the sender immediately by reply e-mail message and permanently
delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

----------------------------------------------------------
This e-mail message and any attached files are confidential and are intended solely for the use of the
addressee(s) named above. This communication may contain material protected by attorney-client, work
product, or other privileges. If you are not the intended recipient or person responsible for delivering this
confidential communication to the intended recipient, you have received this communication in error,
and any review, use, dissemination, forwarding, printing, copying, or other distribution of this e-mail
message and any attached files is strictly prohibited. Dickstein Shapiro reserves the right to monitor any

communication that is created, received, or sent on its network. If you have received this confidential communication in error, please notify the sender immediately by reply e-mail message and permanently delete the original message.

To reply to our email administrator directly, send an email to postmaster@dsmo.com

Dickstein Shapiro Morin & Oshinsky LLP
http://www.DicksteinShapiro.com

**Schur, David**

| | |
|---|---|
| **From:** | Charles Joseph [charles@jhllp.com] |
| **Sent:** | Friday, February 18, 2005 10:23 AM |
| **To:** | 'Edmonds Joseph'; Kelly, Deborah; Schur, David |
| **Subject:** | RE: Richardson, Crystal vs. FannieMae |

Let's leave it in linbo—we r having trouble locating the client but thinki we will be successful shortly. I am going to recommend that shew accept defendant's offer.

---

**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Friday, February 18, 2005 9:45 AM
**To:** charles@jhllp.com; kellyd@dsmo.com; SchurD@dsmo.com
**Subject:** Richardson, Crystal vs. FannieMae

Dear Counsel:  I'd like to inquire about your progress on the settlement in the above matter.  Do we need to get a conference call back on track, or are you still pursing settlement options?  Thanks in advance for your status update!

Have a great weekend.

Joe

Joseph C. Edmonds
Case Manager / AHLA ADR Service Program Director
JAMS - The Resolution Experts
555 13th Street, NW #400W
Washington, DC  20004
Main:  202.942.9180 (ext. 524)
Facsimile:  202.942.9186

Need a commercial clause??
Visit:  http://www.jamsadr.com/adrtips/clauses.asp

7/12/2005

# EXHIBIT 7

# TO

# ATTACHMENT B

## Schur, David

| | |
|---|---|
| **From:** | Charles Joseph [charles@jhllp.com] |
| **Sent:** | Monday, March 14, 2005 10:37 AM |
| **To:** | 'Edmonds Joseph'; Kelly, Deborah; Schur, David |
| **Cc:** | 'Zalman Lebovic' |
| **Subject:** | RE: Richardson, Crystal vs. FannieMae |

We r still working on obtaining my client's consent, but I am optimistic

---

**From:** Edmonds Joseph [mailto:JEdmonds@JAMSADR.com]
**Sent:** Monday, March 14, 2005 10:41 AM
**To:** charles@jhllp.com; kellyd@dsmo.com; SchurD@dsmo.com
**Subject:** Richardson, Crystal vs. FannieMae

Dear Counsel:  I'd like to follow up with you on the above.  Last we spoke, counsel was trying to work out the details of a settlement.  Have your settlement talks been successful?

Thanks in advance for your status update!

Best,

Joe

---

Joseph C. Edmonds
Case Manager / AHLA ADR Service Program Director
JAMS - The Resolution Experts
555 13th Street, NW #400W
Washington, DC 20004
Main:  202.942.9180 (ext. 524)
Facsimile:  202.942.9186

Need a commercial clause??
Visit:  http://www.jamsadr.com/adrtips/clauses.asp